Freeman, J.,
delivered the opinion of the court.
This is a petition for certiorari and supersedeas to quash an execution issued from the Circuit Court at Jasper, in favor of Story, on a judgment for $1,-518.30 rendered in that court on the 9th of July, 1861.
Petition alleges that Kelley paid the entire amount of the judgment to W. Byrne, then deputy clerk of said court, and took his receipt, which is filed as an exhibit to his petition.
The facts on which the case turns are substantially as follows: „
*204 Thos. H. Coldwell was the attorney for Story, who had obtained the judgment for him. A. A. Hyde was the attorney of defendant in the case. On February 1, 1862, Coldwell wrote the following letter to Hyde:
“Shelbyville, Tenn. Dear Sir: I wrote to you a few days since in regard to our Kelley debt. I write again to say to you that Mr. Kelley had better pay it up whilst Mr. Story is willing to take currency, for he is getting somewhat off on that subject, and talks like he will not take paper much longer, especially when they keep him out of his money so long. I know it would be death to a man to have to pay gold now.”
Mr. Hyde proves that he received this letter ten or twelve days after its date; saw defendant a day or two after, and handed him the letter; advised him to get up the paper. He also proves that the receipt exhibit to petition was in the handwriting of W. Byrne, who was acting as Clerk of the Circuit Court, had possession of the office, books and papers, and was transacting the business of the office — A. K. Alley being the clerk, whose term had expired in March, 1862, but successor not qualified at the time, and had procured Byrne to act for him.
The receipt is as follows: “ Received of A. Kelley, Jr., $1,584.74, in full of a judgment, interest and costs James Story obtained against him at the July Term, 1861, of the Circuit Court, the money paid being in current bank bills and current Confederate notes. This 3d of March, 1862. W. Byrne, Deputy Clerk.”
*205 Mr. Byrne proves that Alley was absent and bad a company in the Confederate service at Chattanooga, and was back here at different times and procured the witness to attend to the business of his office, and he transacted all the business of the Circuit Court Clerk for perhaps a month and a half, until the induction of the new clerk • into office. He says he gave no bond nor took any oath. States that he has the money yet received from defendant and tried to get it to Story several times — once by Mr. Hyde, but' failed; finally went to Shelbyville in July, 1862, saw plaintiff, but he refused to take it. Mr. Hyde proves that he attempted to go to Shelbyville with the money, but failed on account of military movements.
The first question is, was the payment to Byrne a proper discharge of the judgment, regardless of the character of the money received by him?
By s. 4050 of Code the. clerks of the several courts of this State have authority “to receive the amount of any judgment or decree rendered in the court of which they are clerks, either before or after the issuance of execution thereon.”
By sub-s. 4 of section above quoted, they are authorized to appoint deputies with full powers to trans-sact all the business of such clerks; such deputy first taking an oath to support the constitution and laws of this State, and faithfully to discharge the duties of deputy clerk of the court for which he acts.
It is admitted that Byrne was not a deputy clerk de jure, but it is insisted that he is a de facto officer, *206 and as such bis acts valid. Upon well settled principles, founded on sound policy and reason, we hold that he was an officer de facto, and his acts valid as to all third persons. The case of Farmer and Merchants Bank v. Chester, 6 Hum., 480, is conclusive on this question. In that case the probate of a deed had been taken by one Rose, who had been authorized by the Clerk of County Court of Shelby, to take probate of deeds and other instruments, but had never taken the oath of office, nor been duly qualified as such deputy. The act of 1837-9, ch. 150, enacted that the legally appointed deputy clerks of County Courts should have power to take probate of deeds.
It was held by the court, that Rose was a clerk de facto, and his acts as such valid, although he was not deputy clerk de jure. Judge Wright in case of Venable v. Curd, 2 Head, 586, says: “No principle is better settled than that the acts of an officer de facto are valid when they concern the public or the rights of third persons who have an interest in the act done, and the rule has been adopted to prevent a failure of justice.” The rule is different when he acts for his own benefit, but when strangers or the public are concerned, who are presumed to be ignorant of the defect of title in the supposed officer, his act is always held good.
Here the party was publicly acting as clerk in the office, the public had no notice of the failure to take wthe oath of office, and every reason applies in favor of the validity of his act, to be found in any case in which the rule has been recognized.
*207 It is insisted, however, that the payment to Byrne was void because made in 'Confederate money, and that it was not authorized by the letter of Coldwell, the attorney of Story. Coldwell’s authority to write the letter is not contested, however.
We think nothing can be clearer than that the letter was not only authority to pay in currency or paper, such as was in circulation at the time as opposed to gold, but that it held up the threat of enforcing the collection of the judgment in gold if the party did not get up the “paper,” in the language of the letter. And when we consider the fact that Confederate money was passing as'current then, as proven, “as any other paper,” and “much more of it in circulation,” we think the letter, fairly construed in connection with the surrounding facts, authorized the payment in Confederate money, and that such was the expectation of the parties at the time we have no doubt. If bank paper had been intended, it would have so stated jn the letter distinctly. We must construe the language and give effect to the act of the parties in the sense intended by them at the time, and not in the light of subsequent events.
Several other questions have been presented in argument, which we need not notice at any length. It is insisted that we can judicially know that the Federal lines extended between Shelby ville and Jasper very soon after this payment was made, and that then it was unlawful to pay the money to Story. This principle has no application to the case. It was paid to the proper officer, and in the question of proper *208 diligence on the part of such officer who might be sued for not paying over the money to Story, the question might be raised; but as to the payment in this case it has no application. In the next place, we have repeatedly held that we can not judicially know where the lines of armies in the field were at any particular period of the war. Such facts must be proven as other facts.
The judgment of the Circuit Court will be reversed, and the court proceeding to render such judgment as the court below ought to have rendered, we hold the judgment satisfied,, and direct the execution to be quashed.