HEARD *v.* ELLIOTT *et al.*

(*Nashville.* December Term, 1905.)

1. **DE FACTO OFFICER.** Who is. Acts of, valid.

Where there is a legally existing office, and one acts as such officer without a known appointment or election, but under such circumstances of reputation or acquiescence as are calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumes to be, his acts will be held valid.

Cases cited and approved: State v. Hart, 106 Tenn., 269; Mayor v. Thompson, 12 Lea, 244; Brewer v. State, 6 Lea, 198; Cheek v. Bank, 9 Heisk., 489; McLean v. State, 8 Heisk., 249; Douglas v. Neil, 7 Heisk., 437; Kelly v. Story, 6 Heisk., 202; Calloway v. Sturm, 1 Heisk., 164; Turney v. Dibrell, 3 Baxt., 235; Ward v. State, 2 Cold., 605; Blackburn v. State, 3 Head, 690; Venable v. Curd, 2 Head, 582; Moore v. State, 5 Sneed, 510; Pearce v. Hawkins, 2 Swan, 87; Bates v. Dyer, 9 Humph., 162; Bank v. Chester, 6 Humph., 458; State v. Carroll, 38 Conn., 449; Wilcox v. Smith, 5 Wend. (N. Y.), 231; Mallett v. Uncle Sam's Coal, etc., Mining Co., 1 Nev., 188; Cary v. State, 76 Ala., 78.

2. **SAME.** Mere usurper is not.

Where a mere intruder or usurper, without color of title, simply assumes to exercise authority as an officer, and the public knows, or reasonably ought to know, that he is a usurper, his acts are absolutely void for all purposes.

Cases cited and approved: Hamlin v. Kassafer, 15 Ore., 456; Van Amringe v. Taylor, 108 N. C., 196.

3. **SAME.** Case in judgment.

The officer of entry taker was consolidated with that of county surveyor by acts of 1870, ch. 68. It was abolished by acts 1875, ch. 55, but was again established by acts 1879, ch. 46. T. was

Heard v. Elliott.

elected county surveyor in 1881, but was not elected entry-taker until April 4, 1887. He nevertheless had possession of the books and records of the entry-taker's office from 1881 until 1904, held himself out as entry taker, was reputed to be and was recognized as such by the public, and during all that time performed the duties of the office.

*Held*: That he was entry taker *de facto* prior to the date of his formal election as such, and an entry taken by him on January 21, 1887, was valid.

Acts cited and construed: 1870, ch. 68; 1875, ch. 55; 1879, ch. 46.

4. **ENTRY TAKER.** Office of, created for whole State. **Optional** with county court to elect.

Under an act "to establish the entry taker's office," which provided that the justices of the county courts should, every four years, elect an entry taker for any county in the State *which desired to have an entry taker*, the office of entry taker was created for all counties in the State, but was left optional with each county whether it would fill the office or not by an election.

Act cited and construed:  1879, ch. 46.

5. **EVIDENCE. COUNTY COURT.** Official acts of, cannot be proved by parol.

The minutes are the only competent evidence of the proceedings of the county court, and parol evidence is not admissible to prove its official acts.

Case cited and approved:  State, ex rel., v. True et al., 116 Tenn., 294.

---

FROM SEQUATCHIE.

---

Appeal from the Chancery Court of Sequatchie County.—T. M. McCONNELL, Chancellor.

STATEMENT OF CASE BY MR. JUSTICE NEIL.

By an act passed in July, 1870 (Acts 1870, p. 115, c. 68), the office of entry taker in the State was consolidated with the office of county surveyor. By chapter 55, p. 51, of the Acts of 1875, the office of county entry taker for the various counties in the State was abolished. On the 26th of February, 1879 (Acts 1879, p. 65, c. 46), the legislature passed an act entitled "An act to establish the entry taker's office."

Section 1 of this act reads as follows:

"Be it enacted by the general assembly of the State of Tennessee, that there shall be elected by the justices of the county courts, a majority of the justices being present, at the April term of the court or any quarterly term of said court, every four years, an entry taker for any county in this State which may desire to have an entry taker for their respective counties. Said entry taker shall hold his office for four years and until his successor is elected, and qualified. That the county, if it revives the office of entry taker, may impose the duties upon the county surveyor or register, or elect some one else to fill the office."

The remaining sections concern the oath, bond and fees.

During the year 1881, J. A. Thurman was elected county surveyor of Sequatchie county, and his election was entered upon the minutes of the county court. The minutes do not show that he was elected entry taker, or that

the duties of that office were annexed to his office as county surveyor.

On April 4, 1887, Thurman was elected entry taker by the county court, and this election was entered upon the minutes of the court.

The court of chancery appeals finds and reports that from 1881 continuously until January or February, 1904, J. A. Thurman was in possession of the books and records of the entry taker's office, held himself out as entry taker, was reputed to be and was recognized as such by the public, and that during all this time he performed the duties of the office, making entries, etc.

On the 21st of January, 1887, defendant made his entry before Thurman. Complainant's entry was made on April 4, 1887, being after the formal election of Thurman as entry taker and the entry thereof upon the minutes of the county court.

Both entries are special. Defendant's grant was issued on his entry April 11, 1887. Complainant's grant was issued on his entry April 19, 1887. Both grants cover substantially the same land.

If defendant's entry is valid, his grant relates to it, and he has the prior right. If defendant's entry is void, complainant's right would be superior, since his grant would relate to his entry of April 4, 1887, and thus supplant defendant's grant of April 11th.

The case turns upon defendant's entry; that is, upon the question as to whether it is valid or invalid.

The chancellor decreed in favor of the defendant, dis-

missing the complainant's bill. On appeal the court of chancery appeals affirmed the decree of the chancellor. From the latter decree an appeal has been prosecuted to this court, and errors have been assigned here.

C. C. MOORE, for Heard.

STEWART & STEWART, for Elliott et al.

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the Court.

We are of opinion that the court of chancery appeals acted correctly in affirming the decree of the chancellor. The long possession by Thurman of the books and papers of the office and the performance of the duties thereof with the acquiescence of the public, prior and up to the time when defendant's entry was made, constituted him an entry taker de facto; that is, if such an office was then in existence, a question which we shall presently consider. We adopt as correct the following definition made by Chief Justice Butler in State v. Carroll, 38 Conn., 449, 9 Am. Rep., 409:

"An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised, first, without a known appointment or election, but under such circumstances of reputation or acquiescence as was calculated

to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; fourth, under color of an election or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be such."

We have several decisions in this State bearing upon one or more of the points contained in the foregoing definition. They are *State* v. *Hart,* 106 Tenn., 269, 61 S. W., 780; *Mayor* v. *Thompson,* 12 Lea, 344; *Brewer* v. *State,* 6 Lea, 198; *Cheek* v. *Bank,* 9 Heisk., 489; *Mc-Lean* v. *State,* 8 Heisk., 249, 250; *Douglas* v. *Neil,* 7 Heisk., 437; *Kelley* v. *Story,* 6 Heisk., 202; *Calloway* v. *Sturm,* 1 Heisk., 764; *Turney* v. *Dibrell,* 3 Baxt., 235; *Ward* v. *State,* 2 Cold., 605, 91 Am. Dec., 270; *Blackburn* v. *State,* 3 Head, 690; *Venable* v. *Curd,* 2 Head, 582; *Moore* v. *State,* 5 Sneed, 510; *Pearce* v. *Hawkins,* 2 Swan, 87, 57 Am. Dec., 54; *Bates* v. *Dyer,* 9 Humph., 162; *Bank* v. *Chester,* 6 Humph., 458, 44 Am. Dec., 318.

The special portion of the definition above quoted which is applicable to the present case is the first spec-

ification; that is, where one acts "without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be."

The facts above stated show the required circumstances of reputation and acquiescence. Although there was no actual color of office, in any form of appointment or election, still the long exercise of the duties of the office and the acquiescence by the public would, as said in *Wilcox* v. *Smith,* 5 Wend. (N. Y.), 231, 21 Am. Dec., 213, "afford a strong presumption of at least a colorable election or appointment." See, also, *Mallett* v. *Uncle Sam's Coal, etc., Mining Co.,* 1 Nev., 188, 90 Am. Dec., 484, and *Cary* v. *State,* 76 Ala., 78. None of our cases cited above bear upon this special phase of the question. In all of them there was some form of election or appointment or holding over, to constitute color of office. As stated, however, we are of opinion that this is not essential, but that the long holding one's self out as entitled to the office and performing its duties and the general acquiescence of the public would be sufficient to constitute the person so acting, as to third persons, an officer *de facto,* and make his acts as such officer valid, since it appears from such a state of facts that the person so claiming and acting is an officer in the estimation of the public resorting to him for official acts and relying upon him.

Heard v. Elliott.

We are not to be understood as intimating that the acts of a mere usurper are valid, but, as said by the supreme court of Oregon: "The color of right which constitutes one an officer *de facto* may consist in an election or appointment, or in the holding over after the expiration of one's term, or acquiescence by the public in the acts of such officer for such length of time as to raise the presumption of colorable right by election or appointment." *Hamlin* v. *Kassafer,* 15 Or., 456, 15 Pac., 778, 3 Am. St. Rep., 176. As said by the supreme court of North Carolina: "A mere intruder or usurper is not ordinarily, but may become, an officer *de facto* in some cases . . . but when, without color of authority, he simply assumes to act, to exercise authority as an officer, and, the public knowing that, or reasonably ought to know that, he is a usurper, his acts are absolutely void for all purposes." *Van Amringe* v. *Taylor,* 108 N. C., 196, 12 S. E., 1005, 12 L. R. A., 202, 23 Am. St. Rep., 51. The distinction is found in the length of time during which the person has acted as an officer, and during which the public have acquiesced in his claim and acts. In the present case the time which had elapsed before the defendant's entry was made, during which the public had recognized Mr. Thurman as entry taker of the county and acquiesced in his acts as such, was sufficient to make him an entry taker *de facto* and his acts good as to third persons.

We think the conclusion above reached is reinforced by the fact that under the act of 1870 the office of entry

taker and county surveyor had been consolidated, and under the act of 1879 the county court was authorized to devolve the duties of entry taker upon the county surveyor. The public were thus accustomed to associate the office of entry taker with that of county surveyor. This is a very material consideration, since it appears that in 1881 Thurman was really elected county surveyor. It was natural that the public should thereafter associate the office of entry taker with his office of county surveyor, and that it would seem very reasonable to them that he should immediately claim to be entry taker and act as such. Under these circumstances it is not probable that any one would take the trouble to investigate the records to see whether the latter office had really been imposed upon the holder of the former.

We shall now recur to the question which we postponed a few moments ago. Did the act of 1879 create the office of entry taker for all of the counties of the State, or was there no such office until an actual election by the county court?

We are of the opinion that under a true construction of the act referred to the office of entry taker was revived all over the State, and until there should be an election by the county court it remained as any other unfilled county office. The caption designates the act as one to establishh the entry taker's office. It had been previously abolished by the act of 1875. The purpose was to restore the office. We do not think this general

purpose indicated by the title is overcome by the ex-
pression in the body of the act concerning a "desire"
which any county may entertain to have an entry taker,
or by the use of the expression "if it revives the office,"
etc.   The substance of the matter was that the office
was created for the whole State, but it was left optional
with each county whether it would fill the office or not
by an election.

The entry taker's office was therefore a legal one in
in Sequatchie county, and hence one as to which, other
conditions concurring, there might be a *de facto* incum-
bent.

There is one other question in the case, which was
given great prominence in the opinion of the court of
chancery appeals, and has been much debated by coun-
sel, and we therefore notice it.

The court of chancery appeals found that, although
the minutes of the county court for the year 1881 did
not show that Thurman had been elected entry taker,
yet as a matter of fact he was elected entry taker by
the justices of the county court.   This conclusion was
based on oral evidence taken as to what transpired in
the county court during the terms of that year concern-
ing this matter.   This evidence was objected to by the
complainant, on the ground that it was not competent
to prove by oral evidence the official acts of the county
court; that the minutes were the only evidence of the
determinations reached by that body.   This objection
was overruled by the court of chancery appeals.   We

think that court acted erroneously in so doing. The subject is fully considered by this court in an opinion delivered at the present term by Mr. Justice Shields in the case of *State, ex rel.,* v. *True et al.,* 116 Tenn., 294, 92 S. W., 294, and we refer to that case, without further elaboration.

In reaching the decision which we have announced on the merits of the case, we have excluded the finding which we have just referred to. It does not appear in the statement which precedes this opinion.

However, on the grounds previously set out, we ratify the conclusion reached by the court of chancery appeals, and affirm its decree.