SHOUP VOTING MACHINE CORPORATION *v.* HAMILTON COUN-
TY *et al.*\*

(*Knoxville,* September Term, 1940.)

Opinion filed June 28, 1941.

---

\*See State ex rel. Holt v. Wert, p. 21, infra.

Sizer, Chambliss & Kefauver, of Chattanooga, and Walker & Hooker, of Nashville, for complainant.

T. Pope Shepherd and Joe V. Williams, both of Chattanooga, for defendants.

Mr. Chief Justice Green delivered the opinion of the Court.

The bill herein was filed under section 8835 *et seq.* of the Code to obtain a declaration as to whether a resolution to purchase voting machines by Hamilton County had been adopted by the quarterly county court of that county. An answer was filed and the case tried on stipulation of facts. The chancellor was of opinion that the resolution involved failed to pass the quarterly county court and dismissed the bill.

At its April, 1940, term, proceeding under authority of chapter 159 of the Acts of 1937, the quarterly county court passed a resolution to the effect that the voting machine method of holding elections should be used in Hamilton County. A committee was appointed to investigate as to the best type of machines, prices, etc. At a later meeting of the court the committee reported, recom-

mending the purchase of one hundred of the machines manufactured by the complainant. This report was adopted.

A written bid or contract was presented to the court embodying the terms on which the machines would be supplied by complainant and a resolution was offered to accept the bid. On roll call this resolution failed of passage by a vote of five to five. All members of the court were present. After the vote Esquire Johnson challenged the right of one Langley, acting as a member of the court and voting against the resolution, to participate in the deliberations of the court. The objection to Langley's participation has the following basis:

By chapter 438 of the Private Acts of 1917 Hamilton County was redistricted. That Act divided the county into three districts and, following Section 15 of Article 6 of the Constitution, provided that two justices of the peace should be elected from the second and third districts and three justices of the peace should be elected from the first district, which included the county town of Chattanooga. Subsequently James County was consolidated with Hamilton County and the territory formerly comprising James County was made the fourth civil district of Hamilton County. See chapter 659, Private Acts 1919, chapter 510, Private Acts 1929.

After the Redistricting Act of 1917 it seems that doubt arose as to whether that Act repealed by implication section 675 of the Code providing that "for every incorporated town, one justice is to be elected by the qualified voters therein." Apparently the local authorities concluded that the Code section quoted was not repealed by the Act of 1917 and at the next election in August, 1918, a justice of the peace representing the incorporated town of Chattanooga was elected in addition to three justices

elected from the first civil district in which the county town of Chattanooga was located.

This justice of the peace elected for the municipality was duly commissioned by the governor, qualified for office, and acted as a justice of the peace, participating in the deliberations of the quarterly county court until 1924. At that time another justice of the peace was elected for the municipality, was commissioned, qualified, and acted as did his immediate predecessor. Another justice of the peace for the municipality was elected in 1930 and served without question until 1936. In 1936 defendant Langley was elected as a justice of the peace for the municipality, was commissioned and qualified, and has been acting as a member of the quarterly county court of Hamilton County since that time.

There has been much argument as to whether chapter 438 of the Private Acts of 1917 brought about an implied repeal of section 675 of the Code and deprived the municipality of Chattanooga of the right to elect a justice of the peace and member of the quarterly county court. The chancellor was of opinion that the Act of 1917 did not effect a repeal of the Code section. We do not find it necessary to decide this question in this case.

Defendants insist that Langley was at least a *de facto* justice of the peace and member of the county court and that his official acts are not open to question in a case like the one before us.

Complainant urges that the Act of 1917 abolished the office of justice of the peace for the municipality of Chattanooga and submits that where there is no *de jure* office there can be no *de facto* officer filling it. It was so held in *Ruohs* v. *Athens,* 91 Tenn., 20, 18 S. W., 400, 30 Am. St. Rep., 858, and this is repeated in *Davis* v. *Williams,* 158 Tenn., 34, 12 S. W. (2d), 532. It should be noted that in

so far as a judicial officer is concerned, in *Beaver* v. *Hall,* 142 Tenn., 416, 217 S. W., 649, this court refused to apply the doctrine of *Ruohs* v. *Athens* and the authority of *Ruohs* v. *Athens* was considerably weakened by the later decision.

The argument made for complainant would be more persuasive if the matter involved were some act done by Langley alone as a justice of the peace. The matter involved, however, is an act of the quarterly county court of Hamilton County and of course there is a *de jure* quarterly county court of that county. The real question, therefore, is whether a third party can made a collateral attack on the organization of a *de jure* tribunal, organized and functioning in a manner unquestioned and accepted by the public for more than twenty years. We think no such attack is permissible.

If the whole of the authority exercised by the quarterly county court had been conferred by law on one officer, and some individual, not eligible to that office, had with public acquiescence, under color of right, exercised its functions over a period of years his acts as such official would be fully accredited. *Heard* v. *Elliott,* 116 Tenn., 150, 92 S. W., 764, and many decisions of this court there collected. For stronger reasons we think mere participation as a member, under such circumstances, in the functions of a duly constituted agency of government by one ineligible could not deprive such agency of the status of a *de facto* body.

This conclusion is fully supported by the decision of this court in *State ex rel.* v. *Hart,* 106 Tenn., 269, 61 S. W., 780. In that case, although two of a school board of three were ineligible to membership, nevertheless they were assuming, under color of right, with public acquiescence, to act as members of the board. The board was held to

be a *de facto* organization whose acts were not subject to collateral challenge. A *mandamus* was issued requiring the county trustee to pay a warrant drawn on him for school purposes by such board.

A county is a corporation, as this court has formerly said, the people being likened to the stockholders, and the justices of the peace to the directors or managing officers of a private corporation. In case of private corporations, the law has been thus stated: "Persons who hold office as directors . . . with the consent of the corporation, and under color of an election or appointment, are de facto officers, although their election or appointment may have been illegal and their acts as such, in so far as third persons are concerned, are just as valid and binding upon the corporation as if they were officers de jure." 3 Clark and Marshall on Corporations, p. 2035. To the same effect see 13 Am. Jur., 862, and 19 C. J. S., Corporations, Section 739, p. 76.

A case quite in point is *Chandler* v. *Hart,* 161 Cal., 405, 119 P., 516, Ann. Cas., 1913B, 1094. The charter of the corporation before the court in that case provided for three directors. The stockholders, however, undertook to make the number of directors seven. Action of the enlarged board of directors was questioned in a suit between the corporation and a third party but the right to challenge the authority of the enlarged board in such a suit was denied.

A public corporation like a county is not to be dealt with as a private corporation in all respects. Nevertheless we see no reason to rule that a public corporation should be held to have made a contract which those, recognized by it as lawful agents, declined to adopt. We are of opinion that this collateral challenge by a third

party of the organization of the quarterly county court of Hamilton County cannot be entertained.

The decree of the chancellor dismissing the bill is accordingly affirmed.

Note—In the chancellor's opinion and in the argument of counsel reference was made to the decision of this court in *Swaim* v. *Smith*, 174 Tenn., 688, 130 S. W. (2d), 116, 119. We add this note to call attention to the inadvertent misuse of a word therein.

That case involved the validity of an Act redistricting McNairy County, Priv. Acts 1939, c. 281. Section 2 of the 'Act abolished the office of justice of the peace in each of the incorporated towns in McNairy County. There were three incorporated towns in the county, one of which was the county seat.

We called attention to the constitutional provision of Section 15 of Article 6 that the district of a county including the county town "shall elect three Justices and two Constables." The court had in mind that the Act limited to two magistrates the district including the county town and elided section 2 as unconstitutional. It was said, "To deprive an incorporated town of the additional magistrate for the district in which it is located is to deprive it of a constitutional right." This was erroneous. The sentence should have read, "To deprive the district including the county town or county seat of the additional magistrate is to deprive it of a constitutional right."