COLLIER *et al.* v. CITY OF MEMPHIS.

(*Nashville,* December Term, 1943.)

Opinion filed January 8, 1944.

J. G. REASONOVER and THOMAS B. COLLIER, both of Memphis, for complainants.

JOHN L. EXBY and K. C. LARKEY, both of Memphis, for the City.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The bill was filed by complainants, Thomas B. Collier and others, against the City of Memphis, seeking a mandatory injunction. The relief sought was denied by Honorable Harry Adams, Circuit Judge, sitting as Chancellor.

This appeal is taken only from so much of the decree as denies to complainants the kind of access to their land at the southeast corner of Poplar and New Union Avenues which they contend they are entitled to. When the Aulon viaduct, which is east of the intersection in question, was constructed a 20-foot driveway was left complainants on the north side of their property. This driveway afforded complainants ingress and egress at a point near the intersection of Poplar and New Union Avenues. It is this driveway that complainants had filled in so that it is practically on a level with Poplar Avenue.

They insist that this concrete wall or barrier about 5 feet high and 18 inches wide on the south side of Poplar Avenue should be removed by the City; that complainants had an opportunity to lease this corner to the Lion Oil Company, and under the plans the Oil Company was to erect a valuable filling station at this corner to cost approximately $12,500; and that the failure of the City to remove this concrete wall resulted in the loss to complainants of valuable rentals, etc.

The City contends that in a condemnation proceeding the complainants were paid $10,000; that the barrier was in existence when the condemnation case was tried; and that to remove the barrier would create a. dangerous traffic hazard on Poplar Avenue at this corner.

The plans of the Oil Company were submitted to the City Engineering Department, the Police Department, and the Safety Engineers of the City of Memphis with a view of ascertaining their effect upon the traffic situation at this point, and these Departments recommended that the application for the filling station permit be refused. The City accordingly denied the application on the theory that a dangerous traffic hazard would be created.

Complainants denied that any unusual traffic hazard would be created, but insisted that the City denied the application in discrimination against the complainants and denied them the rights of other citizens in similar circumstances.

The proof shows that Poplar Avenue, which runs east and west (New Union Avenue running north and south), is a very busy thoroughfare with heavy automobile travel; that to permit the erection of a filling station at this corner would result in such cross traffic pouring into and out of the filling station as would create an unusual traffic hazard. It seems that at this point Poplar Avenue

narrows from a width of 46 feet to 36 feet and is on a grade.

Section 2072 of the Municipal Code of the City of Memphis provides as follows:

"Hereafter no filling station, pump, hose line or appliance for supplying gasoline to motor vehicles shall be erected in the City of Memphis until a permit shall have been issued therefor. Application for such permit shall be made by the owner or person controlling or operating such filling station, pump or appliance, or his duly authorized contractor or agent, to the Building Inspector of the City of Memphis; and such owner, operator or contractor shall submit with his application a plan showing all approaches and exits, together with cross section of pavement, gutter and sidewalks drawn to a scale not less than one-fourth inch to one foot. Upon the filing of such application it shall be the duty of the Building Inspector to submit such application and the plan above provided for to the City Engineer for his approval as to approaches and exits and obstructions, if any, to the public ways of the city or to traffic, and the Building Inspector shall not issue any permit until the plan has been approved by the City Engineer in the particulars above mentioned."

While the charge is made by the complainants that the action of the City Engineering Department and the Safety Department was capricious and arbitrary, the proof in the record and the physical facts do not bear out this charge.

Mr. McNeil, Division Manager for the Lion Oil Company of Tennessee, who had charge of the negotiations for the proposed lease from complainants, testifying for them, said:

"Q. That is where you would have discharged your patrons on that street? A. We would have discharged our patrons on both streets, that is what we hoped to do.

"Q. And very heavy traffic, too? A. Yes, sir.

"Q. Well, Mr. McNeil, would you go so far as to say that the flowing in and out from the station of the patrons of the station on to the approach from this viaduct would not have been a traffic hazard? A. Well, I would say this—I would answer that this way—that our engineer did not consider it would be such a traffic hazard that could or would be involved. We figured up the approach, *and from our point of view,* at least, it was not considered to be a traffic hazard, considering the grade there it was not considered an *extreme hazard.*

"Q. That is a matter of opinion, is it not? A. Yes, sir.

"Q. A matter about which reasonable men might differ, in your opinion? A. Yes, sir." (Italics ours.)

On the other hand the City Engineering Department made a survey of the situation, and the City Engineer testified that a filling station at the point proposed would be a traffic hazard. To the same effect was the testimony of one of the captains of the Police Department connected with the Motor Vehicle Inspection Division.

It is insisted by complainants that other property owners along Poplar Avenue have free right of ingress and egress to and from their property, but reference to the exhibits and the testimony discloses that their situations are not identical with the situation now before us.

■ ■ In McQuillin on Municipal Corporations (2d Ed.), Revised Vol. 2, section 519, page 256, it is said:

"Whether a particular public officer acted within the law is a judicial question, but in the absence of fraud or

bad faith, the validity of acts within the discretion of a municipal officer will not be entertained by the court. Courts wll not assume that public officers will act dishonestly or dishonorably, or use their public trust for private ends, and in the absence of proof to the contrary, officers will be presumed to have acted in the exercise of their powers in the interest of the public and within the authority granted them.''

■ It has been held that the rights of an abutting property owner are always subordinate to the public use of the street for travel and for proper municipal purposes. McQuillin on Municipal Corporations (2d Ed.), Revised Vol. 4, section 1425, p. 107.

■ Neither will the courts interfere with the exercise of the discretionary powers of the municipality as to the control of streets except in case of fraud or a clear abuse of power. 44 C. J., p. 932, and cases there cited.

■ The motion of the defendant City to transfer this cause to the Court of Appeals is overruled. We cannot say that the constitutional provisions invoked are colorable, and such being the case, this court has jurisdiction on appeal.

The decree of the special chancellor is affirmed.