BRIMER *et al. v.* MUNICIPALITY OF JEFFERSON CITY *et al.*

(*Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

Ben S. Catlett and Franklin Park, both of Jefferson City, for appellants.

J. D. Hale, of Jefferson City, and Clyde W. Key, of Knoxville, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

This cause originated in the Chancery Court of Jefferson County in which W. O. Brimer and twenty-seven other citizens and taxpayers of the City of Jefferson City sought an injunction to restrain the municipality from participating with Jefferson County, the Department of Highways and Public Works of the State, and the Federal Government, in the cost of acquiring rights-of-way through the city for the relocation of the highway running from Knoxville to Morristown. The bill charges that the city has received from the State as its *pro rata* part of the sales tax approximately "$7,300.00 and that this sum of money is to be used in paying a portion of the cost of acquiring rights-of-way through the corporate limits, etc. and that this is only an initial expense since the taxpayers will be further burdened with additional expense incident to rebuilding the street." The bill further charges that the relocation of the highway "is not for the city."

The action of the Board of Mayor and Aldermen is attacked as being unconstitutional, *ultra vires* and void, upon the following grounds:

(1) The proposed expenditure is not for a municipal purpose, since the new highway is to be constructed by the State Highway Department as a segment of the State's system of public highways.

(2) The resolution, or motion, to participate and appropriation of funds was not adopted in accordance with ordinances of the city, theretofore adopted by the legislative body of the city.

(3) The action taken was by a vote of three to two, one alderman (Brice Wisecarver) being disqualified because he had removed from the ward from which he was elected and had thus vacated his office; that with his vote eliminated and disregarded the ordinance failed for lack of a majority.

The municipality demurred to the bill upon the following grounds:

(1) Because there is no equity upon the face of the bill.

(2) Because the complainants have a full, complete and adequate remedy at law.

(3) Because the complainants have no special or peculiar interest in the controversy not common to all of the citizens, residents and taxpayers of Jefferson City, Tennessee.

(4) Because the Municipality of Jefferson City, Tennessee, is vested by law with full power, authority and right to pass and adopt the motion or resolution of April 3, 1948, and to enter into the contract or agreement with the Department of Highways and Public Works of the State of Tennessee as contemplated in said motion or resolution.

(5) Because the Court is without jurisdiction to prevent, direct or control the Board of Mayor and Aldermen of the Municipality of Jefferson City, Tennessee, in the exercise of their discretion with respect to the location, acquisition or laying out or construction of streets, alleys and highways within the corporate limits of said Municipality.

(6) Because the complainants may not prohibit, direct or control the exercise by the Board of Mayor and Aldermen of the Municipality of Jefferson City, Tennessee, of their discretion in the acquisition, laying out, location and construction of streets, alleys and highways within the corporate limits of said Municipality.

(7) Because it appears from the original bill that the proposed expenditure of municipal funds sought to be enjoined herein, is for a lawful Municipal purpose.

(8) Because the bill does not allege any fraud or clear abuse of power upon the part of the Board of Mayor and Aldermen of the Municipality of Jefferson City, Tennessee, in the adoption of the motion or resolution of April 3, 1948.

(9) Because the action of the Board of Mayor and Aldermen of the Municipality of Jefferson City, Tennessee, may not be collaterally attacked upon the ground that one or more of its members was, upon the date of such action, disqualified to serve upon said Board.

(10) Because it does not appear from the original bill that on and prior to April 3, 1948, the defendant Brice Wisecarver had vacated his office as an Alderman in said Municipality of Jefferson City, Tennessee.

(11) Because it appears from the original bill that on April 3, 1948, the Board of Mayor and Aldermen of the Municipality of Jefferson City, Tennessee, was a *de jure*

body, and that if Brice Wisecarver had ceased to be qualified to serve as a member of said Board, nevertheless upon said date he was a *de facto* member thereof, and the action of said Board is not subject to be reviewed or vacated by this Court.

The Chancellor sustained the demurrer, granted an appeal but expressly declined to continue in effect the temporary injunction pending the appeal. Only complainant Brimer, of the 28 taxpayers filing the bill, perfected an appeal. There is but one assignment of error, as follows:

"It was error for the Chancellor to sustain the demurrer and dismiss complainant's bill since

"The bill specifically alleged that the appropriation undertaken was in direct violation of the City ordinances and the State statutes and that Complainant's who had a common interest along with all other tax payers would suffer irreparable injury unless enjoined."

■ The defendant contends that this assignment does not comply with Rule 14 of this Court, in that it fails to point out specifically the errors claimed to have been committed by the Chancellor and that the decree should be affirmed. The assignment standing alone is subject to the criticism thus levelled against it. We think however that the argument of appellant's counsel appearing on the brief, and immediately following the assignment, brings it within the rule. It reads as follows:

"The bill further alleged that the resolution appropriating the money was a nullity, void and of no effect because the Board of Mayor and Aldermen failed to comply with the ordinances of said town in making such an appropriation and in fact the resolution did not pass or become effective since one of the Aldermen has disquali-

fied himself by removing himself out of the ward from which elected and the amendment to said resolution as shown on its face was not passed by the affirmative vote of a majority of the Board, only three voting, two ayes and one no.''

■ Before giving consideration to questions raised by the demurrer we will make brief response to appellant's contention that the demurrer admits the truth of all allegations in the bill. In no case can a mere statement of facts in a bill be said to be conclusive on demurrer. While the facts may be true yet the demurrer never admits all inferences or conclusions to be drawn therefrom. In Gibsons Suits in Chancery, Sec. 304, it is said in discussing this question: ''The demurrer does not admit any matters of law suggested in the bill, or inferred from the facts stated; nor does it admit the arguments, deductions, inferences, or conclusions, set forth in the bill.'' Citing *Hackney Co.* v. *Robert E. Lee Hotel*, 156 Tenn. 243, 300 S. W. 1.

■ It cannot be admitted as true the allegation that the relocation of the street and the appropriation of funds for that purpose is not for a municipal purpose. The original charter of Jefferson City, Chapter 393 of the Acts of 1901, confers upon the city full authority over streets, to ''grade, pave, or otherwise improve,'' streets, ''or have the same done.'' Sec. 3, Subsection (6). The Department of Highways is given full authority to ''enter into contracts with the municipalities in the state'' relative to improving streets and for ''the acquisition of right-of-ways for such streets.'' Code, Sec. 3242.

■ There is no merit in complainant's contention that a street which is within the corporate limits of a town

loses its character as a city street, due to any work that may be done for its maintenance, or its relocation by virtue of a contract between the municipality and the State Highway Department.

In *Collier* v. *Baker*, 160 Tenn. 571, 27 S. W. (2d) 1085 the Code Section 3242, above referred to, was construed and the precise question here presented was decided adversely to the complainant's contention. Moreover we think it is settled law not only in Tennessee, but in other jurisdictions, that the Courts will not attempt to direct or control municipal authority in the exercise of their discretion with respect to the location and construction of public streets, in the absence of fraud or clear abuse of power. McQuillen on Municipal Corporations, Vol. 2, Section 519; *Collier* v. *Memphis*, 180 Tenn. 509, 176 S. W. (2d) 818; *State of Georgia* v. *Chattanooga*, 4 Tenn. App. 674, 680; *Steil* v. *Chattanooga*, 177 Tenn. 670, 152 S. W. (2d) 624.

Contention is made by the appellant that Brice Wisecarver, a member of the Council, had removed from the ward in which he was elected; that by such removal he vacated his office, and his act in voting for the resolution was in no way binding on the municipality; that the appropriation of funds was invalid, and that the contract with the State Department of Highways was void. We are in agreement with the Chancellor that the foregoing contention is unsound. The charter of Jefferson City, Section 2 of Chapter 344 of the Private Acts of 1915, prescribes the qualifications of the Board of Mayor and Aldermen as follows:

''The Mayor shall reside within the corporate limits for a period of not less than six months preceding his election and during the full term of his office. Each

Alderman shall have been a resident of said Jefferson City for a period of not less than six months immediately preceding his election, and shall continue to so reside during the full term of his office. Each Alderman shall be a resident of the ward from which he is elected, and not more than one Alderman shall be elected from any one ward."

It will not be noted that the above provision of the Charter does not require the Alderman to continue to reside in his ward following his election, but he must continue to be a resident of the city. But conceding that it is clearly implied that he must continue to reside in his ward there is no provision to the effect that by his removal to another ward he thereby vacates his office. We think until his office is adjudged to be vacated by a competent tribunal his official acts are binding on the municipality as a *de facto* officer. In an interesting case, the facts of which are quite similar to the instant case, *State ex rel. Hartford* v. *Craig*, 132 Ind. 54, 31 N. E. 352, 16 L. R. A. 688, it was held that the removal of a councilman from his ward was not in and of itself sufficient grounds to oust him from his office. In that case the statute provided for separate wards and that "no person shall hold the office of Councilman unless, at the time of his election, he is a resident of the ward," etc. Rev. St. Ind. 1881, sec. 3403. The Court said the statute "not only committed to the city council the power to declare a vacancy in such a case, but it has also left the exercise of that power to the discretion of the council. Until that body has acted, the mere fact of removal to another ward will not of itself have the effect to create a vacancy."

The foregoing decision is supported in principle by our own case of *State ex rel. Roberts* v. *Hart*, 106 Tenn. 269,

270, 61 S. W. 780, 781, wherein Mr. Justice WILKES speaking for the Court said:

"It is a well-established rule of law that, if a person exercise the functions of a public office under color of right, and with the acquiescence of the public, he will be deemed an officer *de facto*, and his acts will protect third persons, even though he was not eligible to the office, or had legally forfeited it by removing from the county (Mechem, Pub. Off. sec. 320; Throop, Pub. Off. secs. 631-636); and the acts of such an officer cannot be impeached collaterally, nor his title inquired into, except in *quo warranto* proceedings instituted for that purpose. (Mechem, Pub. Off. sec. 343; Throop, Pub. Off. secs. 631, 632)."

To the same effect see *Shoup Voting Machine Corp.* v. *Hamilton County*, 178 Tenn. 14, 152 S. W. (2d) 1029, 1031. In the latter case the Quarterly County Court adopted a resolution providing for voting machines. Contention was made that the office of Justice of the Peace for Chattanooga had been abolished by the Act of 1914, and with this vote disallowed there would be a tie vote resulting in the defeat of the proposal. In an able opinion by the late Chief Justice GREEN it was held that his right to vote could not be attacked in a collateral proceeding. In speaking of the authority of the Quarterly Court it was said:

"If the whole of the authority exercised by the quarterly county court had been conferred by law on one officer, and some individual, not eligible to that office, had with public acquiescence, under color of right, exercised its functions over a period of years, his acts as such official would be fully accredited." Citing *Heard* v. *Elliott*, 116 Tenn. 150, 92 S. W. 764.

There is no merit in appellant's contention that the resolution of the Council or motion for the appro-

priation of funds was void "because not adopted in accordance with ordinances of the city." The bill fails to recite the provisions of any ordinance relied on with respect to the manner of appropriating money by the City Council. In the absence of any such recitation, the demurrer does not admit the existence of the ordinances; and under our authority we will not take judicial cognizance of them. "The ordinances or by-laws of a corporate town are private laws, and are admissible in evidence only upon proof that they are the laws of the corporation." *Tilford* v. *Woodbury*, 26 Tenn. 189, 190. See also *Rutherford* v. *Swink*, 90 Tenn. 150, 152, 16 S. W. 76.

The ordinances of Jefferson City quoted in appellant's brief cannot be given consideration in the present action. The assignments of error are overruled and the decree of the Chancellor is affirmed.

All concur.