DYKES *et al. v.* HAMILTON COUNTY *et al.*

(*Knoxville*, September Term, 1945.)

Opinion filed December 1, 1945.

Goins & Gammons, of Chattanooga, for complainants, appellants.

Whitaker, Hall, Haynes & Allison, Wilkerson & Wilkerson, and Thos. S. Myers, all of Chattanooga, for defendants, appellees.

Mr. Justice Neil delivered the opinion of the Court.

This suit originated in the Chancery Court of Hamilton County by bill filed by complainants seeking a declaratory judgment involving the constitutionality of Chapter 489 of the Private Acts of 1945. The complainants, suing as taxpayers, asked for a declaration that certain parts of the act, which creates the Humane and Juvenile Court Commission, be declared invalid.

The act assailed creates a juvenile court and also a juvenile court commission for the county. Since only the commission is assailed, we will give a brief summary of Section 4 of said act, also Section 6 and 21, which relate to its duties.

The commission is self-perpetuating in that when a vacancy occurs the act provides that it shall be filled by the remaining members of the commission, "subject however to confirmation by the County Judge and County Council of Hamilton County." All appointments not thus confirmed are declared to be null and void.

Section 4 provides the duties of the commission generally to be (1) to see to the enforcement of all laws for the purpose of prohibiting and restraining inhuman treatment of children and protecting women and children deserted by husbands and fathers; (2) to prepare and maintain proper detention homes for delinquent and dependent white and colored children; and (3) title to all

property shall be vested in a board of trustees selected by the commission, but shall remain under the control of said commission.

Section 6 provides, in substance, that the Judge of the Juvenile Court shall appoint a chief administrative officer or director, who, with the approval of the judge, shall appoint other assistants and employees to carry on the non-judicial work of the court. The director and all other employees must be appointed from a list of eligible persons established through examinations conducted by the Humane and Juvenile Court Commission.

Section 21 provides (1) that all expenses in complying with the provisions of this act shall be a county charge; and (2) the County Council shall each year appropriate funds sufficient for the efficient operation of said court.

The bill alleges that before the act became effective on "the first Monday in April, 1945," the commissioners, who were named in the said act, met and appointed W. L. Scott and O. J. Hubbuch (two of their members) as trustees to hold title to all property to be acquired by the commission, and that before the act became effective the said "trustees" were deeded certain real estate by Minnie C. Ewing for $7,500, with lien retained to secure deferred payments, etc. The bill charges "that the act of the legislature creates the office of Humane and Juvenile Court Commissioner, that such is a county office," and that "said county office is to be filled other than by the people or the County Court," which is in express violation of Article XI, section 17, of the Constitution of Tennessee.

The validity of the deed is questioned on the ground that it was executed and delivered prior to the date when the act took effect and when there were no trustees legally in existence.

The defendants, who are members of the Humane and Juvenile Court Commission, as named in the act, also Roy H. Beeler, Attorney General of the State, demurred to the bill upon several grounds, but the one chiefly relied on and which is conceded to raise the determinative question is "that the Commissioners are not county officials and do not hold a county office." The Attorney General filed an answer stating that he in his official capacity had no interest in the subject matter of the litigation.

The chancellor sustained the demurrer and complainants have appealed and filed three assignments of error. Assignment Number I, which relates to the right of complainants to file the bill, is pretermitted inasmuch as defendants concede that as taxpayers they are entitled to seek a declaratory decree.

Assignment Number II is as follows:

"The Chancellor erred in sustaining defendants' demurrers and in failing to hold that the deed of March 10, 1945, from Minnie C. Ewing to W. L. Scott and O. J. Hubbuch, Trustees, is void and that therefore the vendor's lien note of $7500.00 is void and not binding upon Hamilton County. This was error: (1) Because said deed, being made to grantees having no existence, is void and passes no title. It therefore is open to collateral attack. (2) Because said deed and vendor's lien note obligated Hamilton County for the payment of $7,500.00. Since complainants are county taxpayers, they therefore have a standing in court to question the legality of the payment of county funds."

Assignment Number III:

"The Chancellor erred in sustaining defendants' demurrers, in holding that Chapter 489 of the Private Acts of 1945 did not create a county office and in holding said

act is constitutional. This was error: (1) Because said act creates the office of Humane and Juvenile Court Commissioner for Hamilton County and the holders of said office are county officials. (2) Because holders of said office are directed to be elected 'otherwise than by the people or the County Court' and therefore said act is contrary to Constitution Article 11, section 17, and is unconstitutional.''

The Private Act of 1945, whereby a Juvenile Court and Humane and Juvenile Court Commission were created for Hamilton County, provides a tribunal for dealing with delinquent children, also women and children who have been deserted. The act confers broad powers upon the juvenile judge and the humane commission, the latter being an important and necessary adjunct of the court to the end that all laws be enforced that have as their purpose the protection of women and children from ''inhuman treatment.'' The jurisdiction of the court and also the commission seems to be confined to Hamilton County, and complainants therefore insist that it was the duty of the chancery court to hold that the said commission exercises the functions of a county office as distinct from any other office; that it was the intention of the legislature in passing the act to create a county office. This insistence is based upon the fact *arguendo* that all expenses of the court and the commission must be borne by the county.

The legislature clearly had in mind the erection of a tribunal that was to deal with the life of a child, the future of the home, and the welfare of its members, as well as to protect society from wrongs arising from juvenile delinquency. The judge performs judicial functions; while the commission performs administrative duties. We think the duties of the humane commission are in-

cidental to the powers exercised by the Judge of the Juvenile Court.

■ It plainly appears that the legislature intended to create, and did create, a juvenile court, and also created an office by providing for the humane commission. But was it a county office as contemplated by Article XI, section 17, of the Constitution of Tennessee? This question has been the subject of many judicial decisions. The act in question fixed the term of office of the commissioners and also provides that they shall serve without compensation. The members of the commission do not act separately in the performance of their duties, but collectively. While the commission as a unit is an office, we are not impelled to reach the conclusion that it is a county office in the sense that vacancies must be filled by the people or the county court. The mere fact that a person may hold an important public office whose duties are strictly confined to county affairs, and his salary paid by the county, does not make it a county office. *Prescott* v. *Duncan*, 126 Tenn. 106, 148 S. W. 229.

■ The constitutional provision here invoked by complainants applies to county offices; it has no application to state offices. *Waldauer* v. *Britton*, 172 Tenn. 649, 663, 113 S. W. (2d) 1178. Nor does it apply to a "Power Board" to fix rates for electrical current. *Tennessee Electric Power Co.* v. *City of Chattanooga*, 172 Tenn. 505, 114 S. W. (2d) 441. Nor to judicial officers. *State* v. *Glenn*, 54 Tenn. 472; *Hancock* v. *Davidson County*, 171 Tenn. 420, 104 S. W. (2d) 824.

Counsel for complainants have cited and appear to rely upon *State ex rel. Webb* v. *Brown*, 132 Tenn. 685, 690, 179 S. W. 321, 322, as sustaining their position that the juvenile court in the instant case and the humane commission are county offices; or, in other words, that the

humane commission is not a state office. We do not think the case is controlling. All that the court held was, "The juvenile court so created is a county forum, and serves a county purpose." We readily agree that the juvenile court in the instant case is largely a county forum and that it also serves a county purpose, but the Court does not hold that it is exclusively a county forum and serves only Hamilton County to the exclusion of the state.

In *Hancock* v. *Davidson County et al.*, 171 Tenn. 420, 104 S. W. (2d) 824, the Court dealt with the validity of the act creating general sessions courts. It appears the act transferred from justices of the peace not only their jurisdiction of civil and criminal cases, suits, and actions, but transferred "the authority" of justices of the peace in such cases. It was there held that a justice of the peace in exercising judicial functions is a state officer, while in the exercise of other official duties he is primarily a county officer. We think the same is true of the Judge of the Juvenile Court. It was so held in *Newton* v. *Hamilton County*, 161 Tenn. 634, 33 S. W. (2d) 419, where an act creating a juvenile court for Hamilton County was held to be invalid. It is insisted by complainants that the language used in that case was dicta. While this may be true, we think it is a correct statement and clearly applicable to the instant case. It was there said (161 Tenn. at page 638, 33 S. W. (2d) at page 420): "Perhaps his jurisdiction is so extended by provisions of the act as to make him also a state officer, but he cannot be regarded as a city officer."

The Juvenile Court of Hamilton County is a court of record. It has jurisdiction of any person under seventeen years old who may commit any offense against the State, or who may be a delinquent or dependent child as defined by Sections 10270 and 10271 of the Official Code of 1932,

Code, section 10276, makes it a misdemeanor for any justice of the peace, or city recorder, "in any county . . . where a juvenile court [is] established, to . . . take any action whatsoever in any case concerning an infant which properly falls within the jurisdiction of such juvenile court, *other than to bind said infant over to said juvenile court.*" (Italics ours.) It is thus plainly to be seen by these and other related code sections that the juvenile court is clothed with authority to enforce state laws and its jurisdiction in many cases is superior to that of a justice of the peace who has been declared a state officer.

██ ██ The jurisdiction of a court in a large measure depends upon the act creating it, and yet it may have inherent authority that may extend beyond the geographical limits of a county. We think the judge of the juvenile court, created by the act that is here assailed, in exercising judicial functions, is a state officer. The effect of his decisions in many cases may extend beyond the limits of Hamilton County. What he does in the enforcement of laws for the protection of women and children is not simply county-wide in effect, but involves the peace and the well-being of society generally.

We have heretofore stated that the humane and juvenile court commission is an integral part of the juvenile court. We think that each in a large measure is dependent on the other in the proper enforcement of law and the administration of institutions for the care and protection of children. The juvenile court, in performing acts that are pertinent to sovereignty, could not be made effective unless the commission furnished the judge of said court a list of persons eligible to be appointed by him to serve as law enforcement officers; nor could the court function properly or efficiently unless the commission prepared a

budget showing all necessary expenses for the operation of the court and the maintenance of detention homes as provided by the statute.

Conceding, as we do, that the humane and juvenile court commission is onerated with certain duties that pertain to sovereignty, it does not follow that the legislature intended to make it a county office. It is argued by counsel for complainants that there are many county officers who render important services to the State, such as clerks of the various circuit and criminal courts; that they are part of the machinery of a state court and are elected as county officials. The foregoing, however, furnishes no impelling force to the argument that the legislature intended to create a county office in the instant case as was contemplated in Article XI, section 17, of the Constitution.

█ It is conceded by counsel for the defendant that if the humane commission is a county office, the act is invalid because it does not provide for their election by the people or the county court. We cannot presume that the legislature intended to create a county office, for to do so would be to presume a manifest intention to pass an act that was knowingly unconstitutional. In an early case, *Nelson* v. *Allen*, 9 Tenn. 360, 361, it was pointed out that the legislature is under the same obligation to observe the Constitution as the courts. The presumption necessarily arises that they intended to pass a constitutional statute.

█ Under all the authorities, it is the Court's duty to sustain the act if it is possible to do so. We cannot give to the act a construction that would result in its emasculation and thus defeat its purposes. Applying this universal rule of construction, we hold that where the legislature has created a special tribunal to deal with a

special class, as a juvenile court, and in the same act provides for a commission to serve the court in performing non-judicial functions, the said commission will not be adjudged a county office in the absence of any declared legislative intent.

Responding to the assignment of error in which the validity of the deed from Minnie C. Ewing to Scott and Hubbuch, Trustees, etc., is questioned on the ground of its prematurity, we hold that this is a defect that can be corrected by the execution and delivery of another deed. If she should refuse to execute such a deed, the chancery court has authority to divest title out of her and vest it in the trustees that may be appointed by the humane commission.

The assignments of error are overruled and the decree of the chancellor is affirmed.

Because of his personal interest and participation in the movement for a Court and Home for Juvenile Delinquents in Hamilton County, Mr. Justice CHAMBLISS took no part in the disposition of this case.