WEAKLEY COUNTY MUNICIPAL ELECTRIC SYSTEM, Tom Grooms, H. J. Ramer, W. M. Stowe, H. B. Bell and Milton Roberts, as Commissioners and/or Board of Public Utilities of Weakley County, Tennessee, and B. B. Crockett, Superintendent, v. KENNETH VICK, Hoyt Killebrew, Wilson Clark, Jack Hutchens, J. C. Wilbur, Harold Bunch, Billy Green, Doyle Killebrew, Travis Smith, Lebern Allen, Hershell Winsett, W. C. Cooper, Billy Lewis, Walter Barber, Joe Smith, Fred Page, Willis Rogers, Tommy Oliver, Finis Hagler, Charles Swearingen, Barney Jones, Brodie Rickman, and E. L. Cooper, and International Brotherhood of Electrical Workers—
309 S. W. (2d) 792.

Western Section. July 25, 1957.

Petition for Certiorari denied by Supreme Court February 6, 1958.

Brooks McLemore, Jackson, for Kenneth Vick, and others.

Robert G. Jeter, King Webb and Allen J. Strawbridge, Dresden, for Weakley County Municipal Electric System, and others.

BEJACH, J. This case involves an appeal by Kenneth Vick and others as members of Local Union Number 835, International Brotherhood of Electrical Workers, on behalf of said Local Union Number 835, and the International Brotherhood of Electrical Workers, from a final decree granting an injunction against them entered by Hon. John T. Gray, Chancellor of the Chancery Court of Weakley County, Tennessee, in a suit against them filed by the Weakley County Municipal Electric System, its Board of Commissioners and B. B. Crockett, its superintendent. The injunction appealed from prohibits the appellants, who were defendants in the lower court, from maintaining picket lines and in any way picketing the Weakley County Municipal Electric System, its offices, warehouses, and property, and from intimidating, harming, harassing, or molesting said Weakley County Municipal Electric System, its agents, servants, and employees. Said injunction was granted in a suit filed by the Weakley County Municipal Electric System, organized under and by virtue of Chapter 32, Public Acts of Tennessee, 1935, and Amendments thereto, Sections 6-1501—6-1537, T. C. A., the short title of which is the "Municipal Electric Plant Law of 1935", and by Tom Grooms, H. J. Ramer, W. M. Stowe, H. B. Bell, and Milton Roberts, as Commissioners and/or Board of Public Utilities of Weakley County, Tennessee, and B. B. Crockett, Superintendent for said Weakley County Municipal Electric System, against Kenneth Vick, Hoyt Killebrew, Wilson Clark, Jack Hutchens, J. C. Wilbur, Harold Bunch, Billy Green, Doyle Killebrew, Travis Smith, Lebern

Allen, Hershell Winsett, W. C. Cooper, Billy Lewis, Walter Barber, Joe Smith, Fred Page, Willis Rogers, Tommy Oliver, Finis Hagler, Charles Swearingen, Barney Jones, Basil Rickman, and R. L. Cooper, individually, all citizens and residents of Weakley County, Tennessee, and as members of Local Union Number 835, International Brotherhood of Electrical Workers, Jackson, Tennessee; and H. N. Bell, agent and representative of International Brotherhood of Electrical Workers, and individually; and the International Brotherhood of Electrical Workers, Chattanooga, Tennessee, and W. E. Nichols, a citizen and resident of Jackson, Tennessee, individually, and as representative or agent for Local Union Number 835, International Brotherhood of Electrical Workers, Jackson, Tennessee; and Local Union Number 835, International Brotherhood of Electrical Workers, Jackson, Tennessee; and John Pinkleton, a citizen and resident of Weakley County.

For convenience, the parties will be designated, as in the lower court complainants and defendants, or, as circumstances may require, referred to as appellants and appellees, or called by their individual names or titles.

Complainants' bill alleges that the Weakley County Municipal Electric System has been and is organized and existing under and by virtue of Chapter 32, Public Acts of Tennessee, 1935, together with amendments thereto; that said Weakley County Municipal Electric System is governed by the Quarterly County Court of Weakley County, Tennessee, and the Board of Commissioners, composed of five men duly elected or appointed by the Quarterly County Court of Weakley County, Tennessee, of which Board, Milton Roberts is Chairman, H. B. Bell,

Vice Chairman and W. M. Stowe, H. J. Ramer, and Tom Grooms, the other members; that said Weakley County Municipal Electric System is operated and managed by said Board of Commissioners, which has employed B. B. Crockett as superintendent, and that said B. B. Crockett has the authority and responsibility to operate said System under the supervision and control of said Board of Commissioners and the Quarterly County Court of Weakley County, Tennessee, and that the Weakley County Municipal Electric System is wholly owned by Weakley County, Tennessee. The defendants named are sued as individuals and as agents and representatives of the Union named, and in particular, Local Union Number 835, International Brotherhood of Electrical Workers. The bill alleges that the employees of the Weakley County Municipal Electric System named as defendants have gone on a strike, which strike began December 10, 1951—said strike having been called for the purpose of requiring complainants to recognize Local Union Number 835, International Brotherhood of Electrical Workers, as the bargaining agent of complainants' employees and to require the signing of a contract with said Union. Complainants' bill alleges numerous acts of violence and intimidation of employees of complainants, who had been employed subsequent to the strike or who had not gone out on strike; and that defendants have set up a picket line at various offices and places of business of the Weakley County Municipal Electric System. The bill alleges that the strike by defendants and especially the picketing by them, is illegal, prays for an injunction against same, and prays especially that the defendants be enjoined from trespassing on the property or properties of complainants, from coercing or threatening employees or manage-

ment, from interfering with customers of complainants, or the general public, and from doing bodily injury to any of complainants' employees, or damage to any of complainants' property, from following, pursuing and intimidating employees and prospective employees, and from interfering with customers. The fiat for the issuance of the writ of temporary injunction was signed by Hon. E. A. Morris, Circuit Judge.

After the defendants, through H. G. D. King of Chattanooga, Tennessee, had filed their answer in this cause, complainants filed an amended or additional bill, and there were some attachments for contempt of Court, which are not now involved in this litigation. Still later, Hon. George C. Rowlett of Martin, Tennessee, who had been employed to represent defendants, replacing H. G. D. King, leave of court so to do having been granted, withdrew the answer filed by H. G. D. King and filed an amended or supplemental answer, which raises the issue of constitutionality of the Municipal Electric Plant Law of 1935, as applied to Weakley County and its Municipal Electric System. Mr. Rowlett also signed on behalf of defendants, along with Messrs. King Webb and Robert G. Jeter for complainants, an agreement to hear this cause on oral evidence without the intervention of a jury, which agreement also stipulated that same be heard January 18, 1955 at an adjourned hearing of the Court. When the cause came on for hearing on January 18, 1955, however, Mr. Rowlett appeared and announced that he and his clients had disagreed about his duties, obligations, and other matters concerning his employment in this cause and that he had withdrawn from the case with the approval and consent of his clients, the defendants herein, who had full knowledge and notice that the cause was

set for trial, January 18, 1955. Mr. Rowlett was permitted to withdraw as solicitor for defendants and said defendants were called to come into Court and defend their suit, but came not. Notwithstanding the calling of defendants, the hearing of the cause proceeded, ex parte, and the proof of complainants was presented orally in accordance with a stipulation previously filed. A considerable volume of testimony was presented, same occupying 674 pages of typewritten matter in the bill of exceptions now before this Court. Consideration of this testimony is rendered unnecessary, however, by reason of the fact that defendants' present solicitor and counsel makes no question as to the findings of fact made by the Chancellor, based on said testimony. He does, however, challenge certain of the conclusions of law reached by the Chancellor which were embodied in the final decree, and limits the case to two questions of law to be adjudicated by this Court, viz.,

First, whether or not Chapter 32, Public Acts of Tennessee, 1935, is constitutional, so that complainants can lawfully maintain this action.

Second, whether or not the Weakley County Municipal Electric System, if it has been legally organized and constituted, can lawfully enter into a contract with a labor union with respect to its employees and their working conditions, rates of pay, etc.

The Hon. Brooks McLemore, present counsel for defendants, appeared before the Chancellor, in this cause, after the hearing, referred to above, but before the Chancellor had rendered his decision,—the cause having been taken under advisement. He was permitted to file with the Chancellor a brief on behalf of defendants, and

he approved the form of the final decree entered in the lower court, November 8, 1955, after the Chancellor had on November 1, 1955 filed his written opinion, which is made part of the record in this cause. The final decree contains an elaborate recital of finding of facts, which follow and sustain the allegations of complainants' bill in this cause. Among these recitals is an adjudication,

"that the Weakley County Municipal Electric System is wholly owned and operated by Weakley County, a body politic and one of the political subdivisions of Tennessee, that in such operation, Weakley County partakes of and becomes a municipality or public municipal corporation; that the Weakley County Municipal Electric System, in its function as distributor of electricity for sale at retail, occupys the position of engaging in a proprietary capacity, and not in the performance of a pure governmental function; that Weakley County, as a municipality, occupys a dual capacity, in that part of its activities are governmental functions and part are proprietary or quasi private functions; that there is a legal distinction between a municipality or political subdivision of the government and a private corporation engaged in a similar business; that employees of a municipality or public subdivision, such as Weakley County, occupy a distinct and different relationship to their employer from employees of an individual or private corporation; that employees of a municipality or a political subdivision of the State do not have the right to bargain collectively and contract with their employer as do employees of a private business, and a municipality does not have the right or power and cannot bargain collectively or enter into a con-

tract with its emloyees, through a labor union, fixing rates of pay, working hours, working conditions, and other related matters, as does a private employer,—such municipality being limited and circumscribed by the fact that it is a governmental agency, all of which is so adjudged and decreed.

"It accordingly appears that a strike by the defendants to compel the complainants to bargain collectively with the defendant employees and the defendant union is illegal and against public policy, and that picketing by defendants' employees, the defendant Union, and its servants, agents and employees, in furtherance of such strike, is illegal and unlawful, all of which is so adjudged and decreed."

Following the recitals, of which the above quotation is a part, the final decree permanently enjoins the defendant employees of complainants (naming them individually), together with their agents, servants, and other employees of the International Brotherhood of Electrical Workers of America, Local Number 835, and its parent organization, together with its agents, servants, and employees, from maintaining picket lines and in any way picketing the Weakley County Municipal System, its offices, warehouses, and property, and from intimidating, harming, harassing or molesting the complainants, its agents, servants and employees.

From this final decree, defendants have prayed and perfected their appeal. The appeal was originally prayed to the Supreme Court, but that Court has transferred the cause to the Court of Appeals.

Appellants have filed six assignments of error; but these assignments present only the two questions of law stated above, viz., First, the question of constitutionality of the Municipal Electric Plant Law of 1935, as applied to Weakley County; and, Second, the question as to the right of complaninants to enter into a labor contract with the defendant Union.

Appellants content that Chapter 32, Public Acts of 1935, as applied to Weakley County, is unconstitutional because it violates Article XI, Section 17 of the Constitution of Tennessee, which provides that "no County office created by the Legislature shall be filled otherwise than by the people or the County Court". The constitutionality of Chapter 32, Public Acts of 1935, was upheld in the case of Tennessee Electric Power Co. v. Mayor and Aldermen of Town of Fayetteville, 173 Tenn. 111, 114 S. W. (2d) 811. In that case, however, the ground of attack made in the instant case .was not involved.

Appellants, in support of their contention that said Act is unconstitutional, cite and rely on the case of Davis v. Williams, 158 Tenn. 34, 12 S. W. (2d) 532, which case held unconstitutional Chapter 395, Private Acts of 1927 by which was created the office of "Delinquent Poll Tax Collector" for Hamilton County. In that case, said Act was held to be unconstitutional because it violated Article XI, Section 17 of the Tennessee Constitution. The Act there involved provided that the office of Delinquent Poll Tax Collector should be filled by appointment of the County Judge, but confirmed by the Quarterly County Court. The Supreme Court held "that the mere right of confirmation, conferred upon the quarterly county court, is not equivalent to the power to appoint",

and the Act was, accordingly, declared invalid. The case of Davis v. Williams also held that there could be no *de facto* officer under the statute there involved, because there could be no *de facto* officer in the absence of a *de jure* office to be filled. That holding of the Supreme Court is also relied on by appellants in the instant case, as being applicable to the Board of Commissioners of the Weakley County Municipal Electric System.

In support of their contention that the members of the Board of Commissioners, who are complainants in this cause, are County officers, appellants point out that under the provisions of Section 13 of Chapter 32, Acts of 1935, same being Section 6-1509, T. C. A., each member of the Board is required to give bond and to take the same oath of office as is required for members of the governing body,—the Quarterly County Court, in the case of Weakley County.

On the other hand, it is the contention of counsel for complainants that the members of the Board of Commissioners of the Weakley County Municipal Electric System are not County officers within the meaning of Article XI, Section 17 of the Constitution of Tennessee, and that said constitutional provision is not applicable to the facts of the instant case. They cite in support of this contention, Dykes v. Hamilton County, 183 Tenn. 71, 191 S. W. (2d) 155; Ragon v. Thrasher, 194 Tenn. 463, 253 S. W. (2d) 31, and a number of other Tennessee cases, some of which will be discussed in this opinion.

The case of Dykes v. Hamilton County, 183 Tenn. 71, 191 S. W. (2d) 155, involved the constitutionality of Chapter 489, Private Acts of 1945, which created a Juvenile Court and also a Juvenile Court Commission for Hamil-

ton County. The constitutionality of the Act, so far as the Juvenile Court Commission provided for therein was concerned, was attacked on the ground that the members of said Commission were County officers, and that the Act therefore violated Article XI, Section 17 of the Tennessee Constitution because the method for their election, as provided for in said Act, was other than by the Quarterly County Court or the people of Hamilton County. The Commission therein created was a self-perpetuating body with a provision that when vacancies occurred, same should be filled by the remaining members of the Commission, "subject, however, to confirmation by the County Judge and County Counsel of Hamilton County." The constitutionality of the Act, including the provision for the Juvenile Court Commission, was upheld by the Chancellor, whose opinion was affirmed by the Supreme Court. From the Supreme Court's opinion, written by Mr. Justice Neil (now Chief Justice), we quote:

"It plainly appears that the legislature intended to create, and did create, a juvenile court, and also created an office by providing for the humane commission. But was it a county office as contemplated by Article XI, section 17, of the Constitution of Tennessee? This question has been the subject of many judicial decisions. The act in question fixed the term of office of the commissioners and also provides that they shall serve without compensation. The members of the commission do not act separately in the performance of their duties, but collectively. While the commission as a unit is an office, we are not impelled to reach the conclusion that it is a county office in the sense that vacancies must be

filled by the people or the county court. The mere fact that a person may hold an important public office whose duties are strictly confined to county affairs, and his salary paid by the county, does not make it a county office. Prescott v. Duncan, 126 Tenn. 106, 148 S. W. 229." Dykes v. Hamilton County, 183 Tenn. 71, 77, 191 S. W. (2d) 155, 158.

In the case of Prescott v. Duncan, 126 Tenn. 106, 148 S. W. 229, the Act which created the County Commission for Shelby County was upheld by the Supreme Court, including a provision therein for filling vacancies similar to that provided for in the Hamilton County Law. Also, in the Shelby County Commission Act, the validity of same, with reference to the method of selection of numerous subordinates appointed by the County Commissioners, was upheld, they being declared to be employees of the County, rather than officers, notwithstanding the fact that some of them were designated in the Act, itself, as officers. Similarly, a Commission form of government for Knox County was upheld in the case of Troutman v. Crippin, 186 Tenn. 459, 468, 212 S. W. (2d) 33, 39.

In Ragon v. Thrasher, 194 Tenn. 463, 253 S. W. (2d) 31, the Supreme Court upheld an Act of the Legislature which provided for a Council-Manager form of Government for Hamilton County. In this decision, it was held that the County Manager, who was selected by the County Council, rather than by the Quarterly County Court or by the people of Hamilton County, was an employee, and therefore, that the provisions of Article XI, Section 17 of the Constitution of Tennessee did not apply.

538

■■■ We think the "Municipal Electric Plant Law of 1935", Chapter 32, Public Acts of 1935 (Sections 6-1501 —6-1537, T. C. A.) is constitutional and valid in its entirety, and, consequently, that complainants were within their rights in bringing and maintaining their suit in the instant case. If, however, we assume that the contention of defendants is correct as to the members of the Board of Commissioners being County officers, and therefore not authorized to serve as such, *de jure*, because they were not elected by either the Quarterly County Court or the people of Weakley County, the result would still be the same. In our opinion, the case of Davis v. Williams, 158 Tenn. 34, 12 S. W. (2d) 532, is not applicable to the facts involved in the instant case. Davis v. Williams held that there can be no *de facto* officer holding an office which does not exist *de jure*. Chapter 32, Public Acts of 1935, is a general law applicable to the entire State of Tennessee and the term "municipality" as therein used includes any County and also any incorporated City or Town in the State. Even if we must assume that members of the Board of Public Utilities provided for in Section 13 of said Act (Sections 6-1507—6-1510, T. C. A.), are to be considered officers and not employees, nevertheless, such Board members would be *de jure* officers in every incorporated city or town operating municipal electric plants under the provisions of said Act, since in incorporated cities and towns the requirement of election by the Quarterly County Court or by the people would not be applicable. Inasmuch, then, as Board members would be *de jure* officials, at least in incorporated cities and towns, if, in an incorporated city or town, the Board members happened to be irregularly appointed or elected as, for example, if they

were ineligible to hold such positions, they would still be *de facto* officers. By the same token, if Board members in Counties, as distinguished from incorporated cities and towns, could not be *de jure* officers, because they were not elected by either the people or th Quarterly County Court, but had entered upon and performed their duties as such Board members, they would certainly be entitled to be considered *de facto* officials. Their position would be, in our opinion, exactly the same as Board members in incorporated cities or towns who had been irregularly appointed or elected. See Brimer v. Municipality of Jefferson City, 187 Tenn. 467, 216 S. W. (2d) 1, and Heard v. Elliott, 116 Tenn. 150, 92 S. W. 764.

Even if we go one step further, and assume that the Board members of the Weakley County Municipal Electric System could not be either *de jure* or *de facto* officers, or even employees, nevertheless, complainant B. B. Crockett as superintendent of Weakley County's Municipal Electric System, must be treated as either a *de jure,* or at least a *de facto,* employee of the County. When he was employed as superintendent by the Board of Commissioners he became legally an employee of Weakley County (as did, likewise, the striking defendants), and not merely an employee of said Board, because, in such cases, the doctrine of *respondent superior* does not apply. Hale v. Johnston, 140 Tenn. 182, 203 S. W. 949; Lunsford v. Johnston, 132 Tenn. 615, 179 S. W. 151.

While Weakley County was not, in our opinion, a necessary party complainant in this suit, it certainly would have been a proper party complainant. In spite of the fact that complainants' bill in this cause captions the Weakley County Municipal Electric System as "a muni-

cipality'', we think this was an unwarranted assumption on the part of complainants' solicitors. Weakley County, itself, and not its municipal electric system is the "municipality" provided for in Chapter 32, Public Acts of 1935. Since, therefore, B. B. Crockett, alone, as superintendent of the Weakley County Municipal Electric System, could have maintained the suit in the instant cause for the protection of its properties, and would have been entitled to the same relief that was granted by the Chancellor, it becomes immaterial as to whether the Board members may be treated as either *de jure* or *de facto* officers or employees of Weakley County. Whether the Board members be treated as *de jure* or *de facto* officers or employees of Weakley County, or considered as legally nonexistent, nevertheless, they together with B. B. Crockett, the superintendent of the Municipal Electric System, were the agents of Weakley County, by and through whom it operated its said electric system. As was held by the Supreme Court in Nashville Electric Service v. Luna, 185 Tenn. 175, 204 S. W. (2d) 529, 532, the Weakley County Municipal Electric System must be held to be an agent, or agency of Weakley County, and not a separate governmental agency.

█ █ Certainly, under the well settled rule of construction that statutes should be so construed as to uphold their constitutionality, all doubts should be resolved in favor of the validity of the Weakley County Municipal Electric System, as organized under the provisions of Chapter 32, Public Acts of 1935. Crewse v. Beeler, 186 Tenn. 475, 212 S. W. (2d) 39; Dykes v. Hamilton County, 183 Tenn. 71, 191 S. W. (2d) 155. In order to reach that result, it would be proper, if necessary, to elide one or more whole sections of the Act. Crewse v. Beeler, 186

Tenn. 475, 212 S. W. (2d) 39; Bell v. Town of Pulaski, 182 Tenn. 136, 184 S. W. (2d) 384, 387.

The second contention made by defendants in this cause is that, even if the Weakley County Municipal Electric System has been legally constituted and organized, it can lawfully enter into a contract with a labor union with respect to its employees and their working conditions, rates of pay, etc.; and, therefore, that defendants should not have been enjoined from peaceful picketing. Assuming that they are limited to this second contention, they concede that that portion of the final decree in this cause which enjoins defendants from intimidating, harming, harassing, or molesting the complainants, its agents, servants and employees, was proper; but, they insist that the injunction should be modified so as to permit peaceful picketing, and, especially so since the Chancellor rested his decision in this cause not on acts of violence perpetrated by defendants, but exclusively on the ground that the strike involved in this cause was for an illegal purpose and consequently that even peaceful picketing should be enjoined.

This contention of defendants is predicated on the proposition that Weakley County, in operating its Municipal Electric System acts in its proprietary or corporate capacity, and not in its governmental capacity as an agency of the State of Tennessee.

Assuming, but not admitting, that the complainants in the instant cause do not come under the National Labor Relations Act (Taft-Hartley Law), Title 29 U. S. C. A. Sec. 152(2), defendants contend, nevertheless, that they have the right to organize, to bargain collectively with their employer, and to strike, if necessary, for the pur-

pose of obtaining their objectives, with peaceful picketing being a proper and legal incident of such strike. Defendants' counsel cites and relys on the case of Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 112 S. W. (2d) 817, and points out that the National Labor Relations Act had been enacted at the time that case was decided.

■ The law seems to be well settled that, generally speaking, when a municipal corporation is engaged in the business of furnishing and delivering electricity, light, or power to itself or its inhabitants, such business is done in its proprietary, business, private, or quasi private capacity, and not in its governmental capacity, or as a governmental function. 37 Am. Jur.—Municipal Corporations—Section 115, page 729; 63 C. J. S. Municipal Corporations sec. 1052(2), p. 673; McQuillan on Municipal Corporations, Vol. 12, Sec. 35, page 678. Such is also the general rule in Tennessee. Nashville Electric Service v. Luna, 185 Tenn. 175, 204 S. W. (2d) 529, 532; Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 112 S. W. (2d) 817; Saulman v. Mayor and City Council of Nashville, 131 Tenn. 427, 433, 175 S. W. 532, 534, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254. In the case of Nashville Electric Service v. Luna, 185 Tenn. 175, 188, 204 S. W. (2d) 529, however, the Supreme Court expressly reserved the question of whether or not Chapter 33, Public Acts of Tennessee, 1935, 1st extra session, makes the operation of electric plants organized under the provisions of that Act, a governmental function.

We cannot agree with counsel for defendants that the case of Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 112 S. W. (2d) 817, can be relied on as

authority for the proposition that Weakley County, through its Board of Public Utilities, or otherwise, is authorized to enter into a labor contract with the defendant Union. The defendants' argument, on this point, is that since the right of the City of Memphis to enter into a contract with the Public Works Administration of the United States government (known as P. W. A.), was upheld, which contract provided, among the provisions thereof, that "employees shall have the right of collective bargaining", Weakley County must be held to have similar authority to contract directly with Local Union Number 835, International Brotherhood of Electrical Workers. In upholding the right of the City of Memphis to enter into this contract with P. W. A., the Supreme Court in its opinion written by Mr. Justice McKinney, expressly based its decision on the specific authority granted to the City of Memphis under the provisions of Chapter 108, Sec. 2, Private Acts of 1935, Extra Session. From that opinion, we quote:

"The proposed contract with P. W. A., by which the city is to obtain a long-time loan at a low rate of interest, is attacked upon substantially the same grounds as those interposed to the contract between the city and T. V. A. The authority for this contract is found in chapter 108, sec. 2, Private Acts of 1935, extra session, and is as follows:

"'To make contracts and execute instruments containing such terms, provisions and conditions as in the discretion of the governing body of the municipality may be necessary, proper or advisable for the purpose of obtaining a grant, loan or other financial assistance from any Federal Agency pursuant to or

by virtue of the Recovery Act.' (Defined in section 1 to include N. I. R. A. and the Emergency Relief Appropriation Act of 1935) ; 'and to carry out and perform the terms and conditions of all such contracts or instruments.'

\* \* \* \* \* \*

"We are of the opinion that under the authority of the Legislature, which we have set out above, the city had a right to make this contract, and, functioning as a private corporation, the question of delegation of power is not pertinent. But in no event can we see wherein the city has delegated any of its powers to P. W. A., even though they may be treated as legislative." Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 362-363, 112 S. W. (2d) 817, 823.

Chapter 108, Private Acts of 1935, Extra Session, referred to in the above quotation was an amendment to the Charter of the City of Memphis. By a separate amendment to its Charter, Memphis had previously been granted authority to buy or build an electric light and power plant, and had already voted to issue $9,000,000 of bonds for that purpose. No similar special authority for Weakley County, such as had been granted to the City of Memphis, is pointed out, and we may safely assume that none exists. Even in the case of the City of Memphis, the special authority thus granted was limited to the making of contracts with P. W. A. or other Federal agencies for the purpose of obtaining a grant, loan, or other financial assistance.

The learned Chancellor, in the instant case, did not rest his holding that the strike involved in the instant case was illegal on the ground that Weakley County, in operating its Municipal Electric System, was engaged in a governmental function. On the contrary, after reviewing the authorities on the subject, some of which are cited above, he reached the conclusion that, in the operation of its Municipal Electric System, Weakley County was acting in a proprietary capacity, but that even in carrying out that function, it was illegal for it to enter into a collective bargaining agreement with the defendant Union, and that a strike by defendants to force the signing of such agreement was illegal. From his opinion on this aspect of the case, we quote:

"From the above authorities, the Weakley County Municipal Electric System, in its activity and sale and distribution of electricity, is engaged in a private or quasi private and proprietary business and not in a governmental function. The question that the Court must further decide as to whether or not the complainant can lawfully enter into a collective bargaining agreement with its employees and can legally contract with a labor organization. A close examination of the authorities submitted by both complainant and defendants in their briefs and the further examination by the Court of additional authorities, makes the decision of this case a difficult one. The Court, however, is of the opinion that there is a difference between a municipality even while engaged in a proprietary act than that of a private corporation engaged in a similar business; that the employees of a municipality occupy a different relationship to the employer than do the employees of a private or in-

dividual corporation; and that the employees of a municipality do not have the freedom to contract as do the employees of a private business, nor does the municipality likewise have the freedom of action in the relationship to labor of employees that a private business has. The municipality is limited and circumscribed by the fact that it is a governmental agency. The result is, the Court is of the opinion that the complainant owning and operating the electric plant of a municipality under the Public Acts of Tennessee of 1935, Chapter 32, and likewise under the authorities cited and the examination of the holdings of the Court, cannot lawfully enter into a collective bargaining agreement with its employees, and cannot and could not make a contract with its employees as a labor union and that a strike to compel the complainants to bargain collectively with its employees would be, and is, an illegal strike, and that picketing, although peaceful, nevertheless will be prevented by the injunctive relief prayed for by the complainant.''

There being no Tennessee cases bearing directly on the specific question involved, the learned Chancellor naturally looked to other jurisdictions for authorities, and rested his decision on the case of Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So. (2d) 194, 165 A. L. R. 967. That case involved facts more nearly identical with those involved in the instant case than any authority which has been pointed out, or which we have been able to find. It arose in the form of a declaratory judgment suit filed by Miami Water Works, Local Number 654, and in it, the majority opinion of the Supreme Court of Florida denied the right of

collective bargaining with the City, notwithstanding a provision in the "Right to Work" statute of the State of Florida that same "shall not be construed to deny or abridge the right of employees by and through a labor organization or union to bargain collectively with their employer." F. S. A. Const. Declaration of Rights, sec. 12. A dissenting opinion was filed, on the ground that the City of Miami in operating its water works system was acting in its proprietary or corporate capacity. We have a "Right to Work" or "Open Shop Law" in Tennessee, enacted as Chapter 36, Public Acts of 1947, now codified as Sections 50-208—50-212, T. C. A., the constitutionality of which statute was upheld in Mascari v. International Brotherhood of Teamsters, etc., 187 Tenn. 345, 215 S. W. (2d) 779. The Tennessee statute contains no qualifying clause similar to that quoted above from the Florida law, consequently, the Florida decision should have even greater controlling influence, because of that circumstance.

Another authority which supports the ruling made by the learned Chancellor in the instant case, in which ruling we concur, is the case of City of Los Angeles v. Los Angeles Building and Construction Trades Council, 94 Cal. App. (2d) 36, 210 P. (2d) 305, 311. In that case, it was held that a strike against the Water and Power Department of the City of Los Angeles was unlawful and against public policy. From the opinion of the District Court of Appeal of California in that case, we quote:

"From what has already been said, we think it is self-evident that the defendants may not, consistently with the public policy expressed in the Los Angeles City Charter, lawfully either strike or picket for the

purpose of enforcing demands as to conditions of employment in respect to which neither the city nor the Department of Water and Power is obligated to bargain collectively. To hold to the contrary would be to sanction government by contract instead of government by law. The charter mandate for non-discriminatory competitive civil service examinations clearly cannot be modified by agreement, whether coerced by economic and moral suasion, or free and voluntary. Likewise, to the extent that the conditions of employment commonly arranged by contract are covered by the provisions of the City Charter, these provisions are controlling and neither the Board of Water and Power Commissioners nor any other city officers, may deviate therefrom by contract. Furthermore, to the extent that the city authorities are vested by the Charter with continuing discretionary powers such as the power to establish, classify (or exempt from the requirements of the classified service), and fix salaries for the various positions in the public employ, and direct the conduct of the work, such discretion may not be lawfully abdicated or delegated. See Mugford v. Mayor and City Council of Baltimore, 185 Md. 266, 44 A. (2d) 745, 747, 162 A. L. R. 1101; Hagerman v. City of Dayton, 147 Ohio St. 313, 71 N. E. (2d) 246, 254, 170 A. L. R. 199. Strikes and picketing to accomplish these objectives are unquestionably for an unlawful purpose.''

Counsel for defendants in the instant case, undertakes to distinguish the Los Angeles case on the ground that the California court, in arriving at its decision in that case squarely refused to make any distinction between

proprietary and governmental functions of the City of Los Angeles. Regardless of whether or not the California court refused to make such distinction, however, its language "to hold to the contrary would be to sanction government by contract instead of government by law" is as applicable to the situation involved in Tennessee, such as appears in the instant case, as it was to the situation in California.

In the case of Nutter v. City of Santa Monica, 74 Cal. App. (2d) 292, 168 P. (2d) 741, it was urged by a labor union that labor legislation applies to public employment in the exercise of its proprietary functions by a municipality in the operation of a bus line; but the Court stated that it was not aware of any rule of law which would furnish a basis for applying the provisions of the National Labor Relations Act to one group of public employees to the exclusion of all others, and that, if the courts were to say that the legislation related to public employment in the exercise of proprietary functions, but not governmental functions, it would amount to judicial legislation.

█ Aside from the questions of illegality and violation of public policy, if, in the instant case, Weakley County is to be permitted to enter into a collective bargaining contract with the defendant Union, we must first ascertain the source of authority for the making of such contract. As was said by Judge Cooper in White's Creek Turnpike Co. v. Davidson County, 82 Tenn. 73, 75,

"Counties in this State have always been held to be public municipal corporations with limited powers, and liable as such."

Also, as was said by Judge Wilkes, speaking for the Supreme Court, in Burnett v. Maloney, 97 Tenn. 697, 712-713, 37 S. W. 689, 693, 34 L. R. A. 541,

" 'Counties owe their creation to the statutes, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe, and impress all the liabilities to which they are subject. Considered with respect to their powers, duties, and liabilities, they stand low down in the scale or grade of corporate existence. For this reason they are ranked among what are styled *"quasi* corporations". This designation is employed to distinguish them from private corporations aggregate, and from municipal corporations proper, such cities acting under general or special charters, more amply endowed with corporate life and functions, conferred in general at the request of inhabitants of the municipality for their peculiar and special advantage and convenience. The decisions of the courts of every state in the union recognizing this distinction hold incorporated towns and cities to a much more extended liability, and give them more extended power and discretion, than they do counties.' "

Weakley County obtains its authority for owning and operating its municipal electric system from the provisions of Chapter 32, Public Acts of Tennessee, 1935 (Sections 6-1501—6-1537, T. C. A.), and the amendments thereto; but we find therein no provision which could possibly authorize the collective bargaining contract demanded by defendants in the instant case, for obtaining of which they went on a strike and established picket lines. Since even "peaceful picketing for an unlawful

purpose, may be enjoined'' (Retail Clerks' Union, Local No. 1403, A. F. of L. v. Wisconsin Employment Relations Board, 242 Wis. 21, 6. N. W. (2d) 698, 708, 149 A. L. R. 452, and Fred Wolferman, Inc. v. Root, 356 Mo. 976, 204 S. W. (2d) 733, 174 A. L. R. 585), and, since, ''it is for the court to determine whether or not the labor objective sought to be accomplished by coercive action by a labor union and its officials is lawful'' (Lafayette Dramatic Productions v. Ferentz, 305 Mich. 193, 9 N. W. (2d) 57, 62, 145 A. L. R. 1158), we think the learned Chancellor, in the instant case, correctly adjudged that the strike of defendants was illegal, and properly granted a permanent injunction against same.

Able and diligent counsel for defendants in the instant case cites and relys on the case of Local 266, International Brotherhood of Electrical Workers, etc. v. Salt River Project Agricultural Improvement and Power District, 78 Ariz. 30, 275 P. (2d) 393, 396 (an Arizona case), and maintains that that case furnishes authority for the position of defendants in the instant case. There, the Arizona court held:

''(1) That the District is engaged in purely proprietary business for the benefit of a restrictive class of citizens, and is governed generally by the same rules that govern private individuals and corporations engaged in similar business, and (2) that the law under which the District was organized vests in the District full power and authority to negotiate and execute collective bargaining agreements affecting terms and conditions of their employment in the District's business.''

On the other hand, with equal diligence and ability, counsel for complainants point out that the Salt River Project, involved in the Arizona case, was not a municipality, or a political subdivision of the State of Arizona, or of any of the other political subdivisions of the State of Arizona, so as to give it immunity from signing a contract with a labor union; but was held to be a free enterprise system, operating for profit, although granted certain immunities from taxation as was provided for in the Act under which same was organized. They maintain that the Salt River Project was in the nature of a local cooperative organization for the purpose of irrigating lands of private individuals, and for the profit of such individual land owners, which organization was granted certain immunities from taxation by provision of the Arizona statute under which same was organized, and that same was not a municipality or political subdivision of the State of Arizona. They point out a marked similarity between the provisions of the Arizona statute under which the Salt River Project was organized, same being Sections 75-701—75-748 A. C. A., A. R. S. sec. 45-901 et seq., and the provisions of the Tennessee ''Utility District Law of 1937'', Chapter 248, Public Acts of 1937 (Sections 6-2601—6-2627, T. C. A.); and they maintain that the decision of the Arizona court construing the rights of a project organized under such statute, should have no controlling application to the rights of the Weakley County Municipal Electric System which was organized, not under the provisions of the Tennessee ''Utility District Law of 1937'', Sections 6-2601—6-2627, T. C. A., but under the provisions of the Tennessee ''Municipal Electric Plant Law of 1935,'' Sections 6-1501—6-1537, T. C. A. We are constrained to adopt the view advocated by coun-

sel for complainants, rather than that contended for by counsel for defendants.

We find no merit in either of the propositions of law asserted by defendants, as appellants in this Court; and all of their assignments of error are, accordingly, overruled. A decree will be entered in this Court affirming that of the Chancery Court of Weakley County, Tennessee, and remanding this cause to that Court for enforcement and supervision of such decree. The costs of this cause, including those of the lower court as well as those of this Court, will be adjudged against the defendants, as appellants in this Court, and against the Great American Indemnity Company, their surety on the appeal bond.

Avery, P. J. (W. S.) and Carney, J., concur.