### STATE of Tennessee

v.

### Bill WHITEHEAD.

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 26, 2000.

J. Ronnie Greer, Greeneville, TN, for appellant, Bill Whitehead.

Paul G. Summers, Attorney General & Reporter, Elizabeth B. Marney, Assistant Attorney General, C. Berkeley Bell, Jr., District Attorney General, for appellee, State of Tennessee.

## OPINION

WADE, P.J., delivered the opinion of the court, in which TIPTON and OGLE, JJ., joined.

The defendant, Bill Whitehead, was charged by presentment with thirteen counts of felonious conflict of interest in violation of Tenn.Code Ann. § 5–14–114, the conflict of interest provision contained in the County Purchasing Law of 1957. Through various motions to dismiss, the defendant challenged the constitutionality of the statute, asserting that the statute violates state and federal principles of equal protection, challenging the statute as void for vagueness, and contending that the County Purchasing Law of 1957 constitutes an inappropriate delegation of legislative power. The trial court denied the defendant's motions but granted an interlocutory appeal on each of the constitutional issues. It is our view that Tenn.Code Ann. § 5–14–114, while not unconstitutionally vague, is violative of equal protection guaranties. Accordingly, the trial court's order denying relief is reversed and the presentment is dismissed. Having determined that the defendant is entitled to relief, it is not necessary to address the question of whether the County Purchasing Law of 1957 qualifies as an unconstitutional delegation of legislative power.

The defendant, a former Greene County Commissioner, was charged with 13 instances of having an indirect financial or beneficial interest in a contract or purchase order between Greene County and either Summers–Taylor, Inc., or Vulcan Materials Company. The charges relate to the period between 1990 and 1998, during which the defendant was a member of the county legislative body. Initially, the defendant, who was 70 years of age at the time of the presentment, filed a request for pretrial diversion. Because the District Attorney General concluded that the defendant "took active steps to [conceal] his conflict by knowingly and repeatedly falsifying his financial disclosure records by denying he received any benefit or income other than Social Security," he denied the request. The District Attorney determined that the defendant received "tens of thousands of dollars" through the association his wife had with Malone Brothers, the successors of which were Summers Taylor, Inc., and Vulcan Materi-

als Company. The state contended that the defendant and his wife deposited in their joint bank account over $33,000 from companies doing business with the county during the period covered by the presentment, which was limited by the statute of limitations. Of equal concern to the state in the denial of diversion was that the defendant had failed to offer restitution.

Later, the defendant challenged the constitutionality of Tenn.Code Ann. § 5–14–114.[1] The trial court overruled the defendant's motions to dismiss, but "because of the substantial nature of the constitutional issues raised," continued the case and authorized an interlocutory appeal. Tenn. R.App.P. 9. This court granted the request.

Initially, our legislature has authorized four alternatives for the regulation of county purchasing activities. One such alternative is regulation by private act. The other three alternatives are found in the Code: the County Purchasing Law of 1957, Tenn.Code Ann. §§ 5–14–101 through 5–14–116 (1998) ("the 1957 Act"); the County Financial Management System of 1981, Tenn.Code Ann. §§ 5–21–101 through 5–21–129 (1998) ("the 1981 Act"); and the County Purchasing Law of 1983, Tenn.Code Ann. §§ 4–14–201 through 5–14–206 (1998) ("the 1983 Act"). The 1957 Act is a "local option" statute which becomes effective in any given county only after being adopted by the required vote of the county legislative body or "upon the contingency of the majority casting votes in any election held for this purpose approving the law." See Tenn.Code Ann. § 5–14–102 (1998). That Greene County adopted the 1957 Act is not in dispute.

The 1957 Act contains a conflict of interest provision which makes it a Class D felony for county legislative body mem-

bers, among others, to "be financially interested, or have any personal beneficial interest, either directly or indirectly, in any contract or purchase order for any supplies, materials, equipment or contractual services used by or furnished to any department or agency of the county government." Tenn.Code Ann. § 5–14–114. The 1981 Act makes it a Class C misdemeanor for any county legislative body member, among others, to be financially or personally and beneficially interested, "either directly or indirectly, in the purchase of any supplies, materials or equipment for the county." Tenn.Code Ann. § 5–21–121, –125 (1998). The 1983 Act, which applies by default to all counties that have not adopted either the 1957 or the 1981 Act and are not governed, with regard to purchasing, by a private act, contains no provision proscribing such a conflict of interest.

The 1957 Act is in force in 14 counties in Tennessee, including Greene County. The 1981 Act is in force in 14 counties. The remainder of our counties are subject to either the 1983 Act or private acts.

The defendant contends that Tenn.Code Ann. § 5–14–114 is unconstitutional for three reasons: (1) that the statute violates the equal protection provisions of both the federal and state constitutions; (2) that the statute is impermissibly vague; and (3) that the 1957 Act is an unconstitutional delegation of legislative authority. While upholding the statute and denying the defendant's motions to dismiss, the trial court expressed reservations about the constitutionality of the 1957 Act, "although not such reservations that would cause [him] to find that it was unconstitutional."

I

Initially, the defendant asserts that Tenn.Code Ann. § 5–14–114 violates the

---

1. Compare Tenn.Code Ann. § 12–4–101 (personal interest of certain public officials prohibited) and Tenn.Code Ann. § 39–16–402 (official misconduct).

guarantees of equal protection found in the Tennessee and United States Constitutions. He contends that classification as a Class E felony of a county official's having a "financial interest" in a county contract only in those counties adopting the 1957 Act does not pass even rational basis scrutiny, the test most favorable to the position of the state. The state contends that there is no equal protection violation because the Act treats different geographic areas of the state, rather than different persons or groups, disparately. It argues that no fundamental right is involved and that the Act does not single out members of a protected class. We agree with the defendant.

Equal protection of the laws is guaranteed by two separate provisions of the Tennessee Constitution: Article I, Section 8, and Article XI, Section 8, which provide as follows:

**No man to be disturbed but by law.**— That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

**General laws only to be passed.**—The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. . . .

Additionally, the United States Constitution explicitly prohibits a state from denying its citizens equal protection:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. *No state shall* make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor *deny to any person within its jurisdiction the equal protection of the laws.*

U.S. Const. amend. XIV, § 1 (emphasis added). Our supreme court has determined that the equal protection provisions of the Tennessee and United States Constitutions, although not identical in content, provide "essentially the same protection." *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d 139, 152 (Tenn. 1993).

"Equal protection analysis requires strict construction of a legislative classification [the strict scrutiny test] only when the classification interferes with the exercise of a 'fundamental right' (e.g., right to vote, right of privacy), or operates to the peculiar disadvantage of a 'suspect class' (e.g., alienage or race)." *State v. Tester,* 879 S.W.2d 823, 828 (Tenn.1994). A right is fundamental only when it is protected, either implicitly or explicitly, by a constitutional provision. *Id.* Fundamental rights include voting, privacy, travel, and the freedoms of speech and association. *King–Bradwell Partnership v. Johnson Controls, Inc.,* 865 S.W.2d 18, 21 (Tenn.Ct.App.1993). Suspect classifications include race, alienage, national origin, and gender. *Id.*

There is no fundamental right to a financial or "personal beneficial" interest in county contracts. Moreover, because

the 1957 Act is effective only in those counties which adopt it either through their governing bodies or popular elections, the class of citizens to which Tenn. Code Ann. § 5–14–114 applies is not discrete and, in consequence, is not "suspect." In other words, Greene County officials are not "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to commend extraordinary protection from the majoritarian process." *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 27, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The defendant's equal protection challenge, therefore, must be determined under the rational basis test, which has been described by our supreme court as follows:

> The concept of equal protection espoused by the federal and our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States," and legislatures are given considerable latitude in determining what groups are different and what groups are the same. In most instances, the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest.

*Doe v. Norris,* 751 S.W.2d 834, 841 (Tenn. 1988) (citations omitted). Under the rational basis test, a classification will be upheld upon a finding of "some reasonable basis" therefor or "if any state of facts may reasonably be conceived to justify it." *McWherter,* 851 S.W.2d at 153 (quoting *Harrison v. Schrader,* 569 S.W.2d 822, 825–26 (Tenn.1978)). Because the defendant is challenging Tenn.Code Ann. § 5–

14–114, the burden is on him to demonstrate that the legislative classification is unreasonable. *Tester,* 879 S.W.2d at 829. Whether a classification is reasonable depends upon the facts in each case. *McWherter,* 851 S.W.2d at 153.

In *Sandford v. Pearson,* 190 Tenn. 652, 231 S.W.2d 336 (1950), the plaintiffs challenged the constitutionality of Chapter 756 of the Private Acts of 1949, which authorized Haywood County to conduct a popular election on the issue of the sale, possession, or transportation of beer. Upon review, our supreme court upheld the plaintiffs' challenge:

> Although no mention is made of it in the caption, section 3, of the Private Act before us here, defines a crime which, if the Act be put in operation, would be "partial" to Haywood County.

> \* \* \*

> This clearly violates Article 11, Section 8, of the Constitution, ... and the Act contains no "saving or rescue" clause from which we would be justified in an inference that without this objectionable penalty, the Legislature would nevertheless, have passed the Act. The effect of this provision is to permit the citizens of Haywood County, by a majority vote, to enact a criminal statute. The enactment of criminal laws is a function exclusively vested in the Legislature by the Constitution....

> \* \* \*

> It remains to consider whether, under Article I, Section 8, and Article 11, Section 8, which taken together, represent the State's expression of the XIV Amendment of the Federal Constitution, the classification of Haywood County with regard to the sale of beer as being unique and distinguishable from the

same legislative problem as it presents itself in the other 94 counties of the State, is a reasonable or an arbitrary classification....

* * *

Giving our obligation of judicial notice its most elastic exercise, we can imagine no basis on which to distinguish any aspect of the beer problem in Haywood County, from the same problem in the other counties of the same or similar size throughout the State. In the Act passed, the Legislature makes no attempt to justify the classification, and that justification was a legislative, not a judicial function.

Under the foregoing authorities for the reasons stated, we are forced to hold that Chapter 756 of the Private Acts of 1949, is unconstitutional as violating Article I, Section 8, and Article 11, Section 8, of the State Constitution.

*Id.* at 339 (citations omitted).

In *State v. Tester,* the defendant challenged a statute which allowed persons convicted of second offense driving under the influence in Davidson, Moore, or Shelby Counties to serve their mandatory 45-day jail sentences in work release programs. 879 S.W.2d at 825. In all other counties, the law required a minimum mandatory jail sentence of 45 days. *Id.* The Washington County trial court determined that the statute violated the equal protection provisions of the state and federal constitutions insofar as its applicability was limited to three counties. *Id.* The trial court elided the portion of the statute limiting its application to only three counties and, applying the work release program eligibility to Washington County, ordered the defendant to spend 50 days in a work release program rather than serve the mandatory jail sentence required by the general law. *Id.* at 827. Our supreme

court ruled that the entire statute was unconstitutional, holding that there was no rational basis for the statute's limited applicability to only three counties, and required that the defendant be subjected to the mandatory minimum jail sentence:

"[T]he classification must not be mere arbitrary selection. It must have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others should be so preferred or discriminated against. *There must be reasonable and substantial differences in the situation and circumstances of the persons placed in different classes which disclose the propriety and necessity of the classification. ... The fundamental rule is that all classification must be based upon substantial distinctions which make one class really different from another; and the characteristics which form the basis of the classification must be germane to the purpose of the law. ..."*

In this case, the "rational basis" advanced by the State in support of the challenged provision is that the jail facilities in Shelby County and in counties with a metropolitan form of government (Davidson and Moore) are overcrowded to the extent that there is a real and substantial distinction between those counties and the other 92 counties in the State. The State concludes, therefore, that the classification is reasonable. We cannot agree.

In our view, this argument ignores the evidence in this record, which indicates that *Washington County* has experienced serious jail overcrowding that was directly caused by the mandatory incar-

ceration of *second time DUI offenders.*
. . .

The State makes an appealing policy argument that the legislative intent was to keep second offenders employed, to help defray the cost in counties, to support families involving minor children, and to allow offenders to meet their financial obligations. These goals, however admirable, apply equally to all second time offenders and provide no rational basis for distinguishing between the three counties to which the act is limited and all the other counties of the State.

*Id.* at 829 (alteration in original) (quoting *State v. Nashville, Chattanooga & St. Louis Railway Co.,* 124 Tenn. 1, 135 S.W. 773 (1910)).

■ In our view, the legislature's classification of a county official's conflict of interest with regard to a county contract as a Class D felony in only those counties adopting the County Purchasing Law of 1957 is purely arbitrary and cannot withstand the defendant's equal protection challenge. Assuming that Tenn.Code Ann. § 5–14–114 was intended to deter graft and corruption, we cannot discern any reasonable basis for limiting its application to certain counties. The state does not suggest a rational basis for the classification. Nor can we determine any reasonable basis for making a conflict of interest a Class D felony in some counties, as the 1957 Act does, a Class C misdemeanor in other counties, as the 1981 Act does, and no crime at all in yet other counties, as the 1983 Act does.

## II

■ Next, the defendant contends that Tenn.Code Ann. § 5–14–114 is void for vagueness. Although we have already determined the statute to be void on other grounds, we nevertheless address this issue and hold that the statute is not unconstitutionally vague.

■ It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The fair warning requirement embodied in the due process clause prohibits the states from holding an individual criminally responsible for conduct which he could not have reasonably understood to be proscribed. *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). Due process requires that the law give sufficient warning so that people may avoid conduct which is forbidden. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). The words of a statute are to be taken in their natural and ordinary sense without a forced construction to limit or extend their meaning. *Ellenburg v. State,* 215 Tenn. 153, 384 S.W.2d 29, 30 (1964). Initially, trial courts are charged with upholding the constitutionality of statutes where possible. *Dykes v. Hamilton County,* 183 Tenn. 71, 191 S.W.2d 155, 159 (1945); *State v. Joyner,* 759 S.W.2d 422, 425 (Tenn.Crim.App.1987). The constitutional test for vagueness is whether a statute's prohibitions are not clearly defined and are thus susceptible to different interpretations as to what conduct the statute actually proscribes. *State v. Forbes,* 918 S.W.2d 431, 447–48 (Tenn. Crim.App.1995); *see also Grayned,* 408 U.S. at 108, 92 S.Ct. 2294; *Baggett v. Bullitt,* 377 U.S. 360, 367, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

Tennessee Code Annotated Section 5–14–114 provides as follows:

(a) Neither the county purchasing agent, nor members of the county purchasing commission, nor members of the county legislative body, nor other officials of the county, shall be financially

interested, or have any personal beneficial interest, either directly or indirectly, in any contract or purchase order for any supplies, materials, equipment or contractual services used by or furnished to any department or agency of the county government.

(b) Nor shall any such persons accept or receive, directly or indirectly, from any person, firm or corporation to which any contract or purchase order may be awarded, by rebate, gift or otherwise, any money or anything of value whatsoever, or any promise, obligation or contract for future reward or compensation.

(c) A violation of this section is a Class D felony.

The defendant complains that the terms "beneficial" and "indirect" are not defined by the 1957 Act. The defendant is correct. Nevertheless, those terms are not so vague that persons of reasonable intelligence cannot understand their meaning. "Beneficial" is defined in *Black's Law Dictionary* as meaning "[f]avorable; producing benefits." *Black's Law Dictionary* 149 (7th ed.1999). It is defined in *Webster's* as "conferring benefits: contributing to a good end: helpful, advantageous." *Webster's Third New International Dictionary*, 203 (1993). "Indirect" is not defined in *Black's*, but is defined in *Webster's* as "not direct: ... (1): deviating from a direct line or course: not proceeding straight from one point to another: proceeding obliquely or circuitously: roundabout." *Id.* at 1151. Thus, Tenn.Code Ann. § 5–14–114 prohibits a county official from having any personally favorable interest in a county contract, regardless of whether that interest is direct or circuitous. While the statute prohibits a broad range of conduct by county officials, it is not so vague that the prohibited conduct cannot be ascertained.

### III

The defendant is entitled to relief on the grounds that Tenn.Code Ann. § 5–14–114 violates equal protection guaranties. It is unnecessary, therefore, to consider whether the 1957 Act should be declared void in its entirety as an unlawful delegation of legislative authority. *See* Tenn. Const. art. II, § 3; *see also Haynes v. City of Pigeon Forge*, 883 S.W.2d 619, 620 (Tenn.Ct.App. 1994) ("[U]nder Tennessee law, our courts do not decide constitutional questions unless the issue's resolution is absolutely necessary for determination of the case and the rights of the parties.").

### CONCLUSION

Because Tenn.Code Ann. § 5–14–114 is violative of Article I, Section 8, of the Tennessee Constitution, the order of the trial court denying the defendant's motions to dismiss must be reversed. The presentment against the defendant is dismissed.