# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 1, 2012 Session

## STATE OF TENNESSEE v. TIMOTHY A. BAXTER

**Appeal from the Circuit Court for Madison County**
**No. 11-250      Roy B. Morgan, Jr., Judge**

---

**No. W2012-00361-CCA-R3-CD  - Filed March 25, 2013**

---

A Madison County grand jury indicted appellant, Timothy Baxter, for one count of aggravated assault.  A jury found him guilty as charged, and the trial court sentenced him to twelve years as a persistent offender.  Appellant contends that the trial court should have granted his motion for judgment of acquittal because the evidence was insufficient to support a conviction for aggravated assault based on serious bodily injury.  Specifically, he alleges that evidence of extreme physical pain did not support the determination of serious bodily injury by the jury.  *See* Tenn. Code Ann.§ 39-11-106(a)(34) (2010).  He also contends that the statutory definition of serious bodily injury is unconstitutional because it is vague and thus violates due process.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Bradley J. Owens and Andrea D. Sipes, Jackson, Tennessee, for the appellant, Timothy A. Baxter.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves an apparent "road rage" incident.  After the victim and appellant had entered the parking lot of an Exxon gas station and exited their vehicles, appellant shoved the victim to the ground.

## I. Facts

The victim, Richard Upright, testified that he was seventy-three years old at the time of trial. He recalled driving south on Highway 45 leaving Jackson, Tennessee, on December 8, 2010, when a car drove past him "like a maniac in the suicide lane," referring to the center lane of an undivided highway. The victim continued driving and soon thereafter noticed that the speeding car was behind him again. The victim observed that the driver of the car, who he later learned was appellant, was again attempting to pass him. The victim was traveling in the left lane. At this point on the road, there was a grass median. He stated that it appeared to him that appellant was attempting to pass traffic by driving on the grass. The victim testified:

> He pulled over and he was gonna [sic] pass me down the median in the grass, is what it looked like in the mirror. And I had other cars ahead of me and behind me, and when he saw he couldn't make it, he pulled back on the road, and then he pulled over on the shoulder, blacktop shoulder. When he pulled over there, he passed everything on the wrong side of traffic on the shoulder. He passed by two or three cars, and I mean crazy like. Then he come [sic] – worked his way in front of me and he slammed the brakes on so they'd run into him, and about that time I got worried . . . .

The victim's passenger, Mary Thomas, used her cellular telephone to call 9-1-1. The victim noted that appellant turned off the highway and onto a "side road" toward Henderson, so he pulled over at an Exxon gas station in Pinson to allow Ms. Thomas to complete the call. When the victim pulled into the parking lot, a pick-up truck with two men inside pulled up beside him. One of the men had witnessed the episode involving appellant and asked the victim if he was okay. As the victim was speaking with the man, appellant pulled in behind them. Appellant stated, "I don't care if you are an old man. I'll hit you anyway." The victim responded, "Well[,] I didn't do nothing [sic]." The victim observed that appellant "looked like he was on something, alcohol or drugs." The victim walked around appellant's car to record the vehicle's license number. When he reached the rear of the car, appellant "shoved" him to the ground. The victim heard "crunching" sounds when he fell. Appellant entered his vehicle and fled the scene.

The victim testified that when he fell, he could not get up and was "doubled up." He described the pain as "killing pain." He testified, "I don't care if it's 1 to 100 or 1 to 10; it's maximum. The pain was maximum in my shoulder and . . . my hip." When asked if his pain was extreme, he further stated that the pain was "more than [he could] handle."

A police officer arrived and asked the victim if he wanted to be transported to the hospital in an ambulance. The victim declined and drove himself to his doctor's office. His treating physician was not in the office, so the victim returned the following day to consult with his personal physician. His doctor ordered x-rays and referred him to another physician, who referred him to the hospital.

When the victim arrived at the hospital, a doctor administered a nerve block. The victim stated that he spent four or five days in the hospital. At the time of trial, more than ten months after the incident, the victim was still under medical care for the pain in his neck and shoulder resulting from his being knocked to the ground. He testified that the pain was still "unbearable." He initially missed two months of work as a truck driver because the pain was so severe. He returned to work, notwithstanding the pain, but had to quit his job because the pain worsened over time. The victim testified that the pain was primarily located in his shoulders, back, neck, and hips.

On cross-examination, the victim acknowledged that he eventually stood up on his own after appellant knocked him down. He was able to speak with some people who had gathered at the gas station. When the victim left the gas station, he immediately drove to his doctor's office, which was a walk-in clinic. The victim admitted that prior to this occasion, he was taking blood pressure medication.

Sergeant Terry Stewart with the Madison County Sheriff's Department testified that he was assigned to investigate the victim's case. During the course of the investigation, he developed appellant as a suspect and determined that the car he had been driving was registered to appellant's girlfriend, Jennifer Rowan. Sergeant Stewart reviewed a statement given by appellant wherein he recounted the event but omitted any reference to his knocking the victim to the ground.

James Bunny testified that he was driving on Highway 45 South and witnessed appellant's vehicle attempting to "ram" the back of the victim's vehicle. He called 9-1-1. Mr. Bunny observed appellant's vehicle pull in front of the victim's car, and appellant "slammed on his brakes a couple of times[,] trying to stop [the victim], apparently. . . ." He saw the victim pull into the parking lot of the gas station. Mr. Bunny turned around, stopped on the opposite side of the road, and saw appellant pull into the parking lot, as well. He observed that appellant looked "very irate" and was pointing his finger at the victim. Mr. Bunny witnessed appellant either push or hit the victim and knock him to the ground. Appellant then left the scene in his vehicle.

Jean Bunny testified that she, too, witnessed the victim's car pass their vehicle, followed by appellant's car, which seemed to be trying to "bump" the victim's car. She saw

appellant's car pass the victim's car, and appellant applied his brakes to force the victim to collide with him. Ms. Bunny testified that after the two cars pulled into the gas station parking lot, they turned their vehicle around and returned to the scene because they "knew it looked like road rage." She observed appellant's "shaking his finger" at the victim, and the victim "started to put his hand up" to push appellant's finger away. Appellant then pushed the victim to the ground and drove away. Ms. Bunny testified that she and her husband drove to the gas station to check on the victim. She recounted that the victim was shaken up and that he stated that his shoulder hurt "quite severely."

Following this testimony, the State rested. Appellant argued an unsuccessful motion for judgment of acquittal, then rested his case without presenting any proof. The jury deliberated and returned a verdict of guilty on the indicted offense of aggravated assault. Following a sentencing hearing, the trial court sentenced appellant to serve twelve years in the Tennessee Department of Correction as a persistent offender.

## II. Analysis

### A. Trial Court's Failure to Grant Appellant's Motion for Judgment of Acquittal

A motion for judgment of acquittal raises a question of law, i.e., the legal sufficiency of the evidence, for determination by the trial court. *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995) (citing *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)). Thus, on appeal, this court applies the same standard of review both to the trial court's denial of a motion for a judgment of acquittal and to the sufficiency of the convicting evidence underlying the jury's verdict. *State v. Carroll*, 36 S.W.3d 854, 869 (Tenn. Crim. App. 1999) (citing *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998)). Therefore, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on this claim of error, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn.

2010)); *see State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729; *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant challenges the sufficiency of the evidence underlying his conviction for aggravated assault. As charged in this case, the State must have proven beyond a reasonable doubt that appellant intentionally or knowingly caused serious bodily injury to the victim. Tenn. Code Ann. §§ 39-13-101(a)(1), -102(a)(1)(A)(i) (2010). Although the element of "serious bodily injury" can be established by proof of one of six separate mechanisms, in this case, the State elected to proceed under the theory of "extreme physical pain." Tenn. Code Ann. § 39-11-106(a)(34)(C) (2010).

The Tennessee Supreme Court recently addressed the level of proof necessary to establish the element of "serious bodily injury" on the basis of "extreme physical pain." *State v. Farmer*, 380 S.W.3d 96 (2012). In *Farmer*, our supreme court held:

> [I]n the instant case, the evidence does not support a finding that [the victim's] injury involved a degree of pain that would warrant its inclusion among the other enumerated portions of the definition of "serious bodily injury." Although [the victim] testified that he experienced pain after realizing he had been shot, hospital records do not classify his pain as "extreme" but rather as "mild" to "moderate." [The victim] was given a prescription for pain medication before leaving the hospital, but he never testified as to the degree of pain he experienced. A jury could not reasonably infer from [the victim's] testimony, the hospital records, and the nature of his injury that [his] wound involved extreme pain.

*Id.* at 101-02 (footnote omitted) (citing Tenn. Code Ann. § 39-11-106(a)(34) (2010)). By contrast, the victim in this case classified his pain as "killing pain," "maximum," "more than [he could] handle," and "unbearable." This is not a case in which the victim's description of the level of his pain is the only evidence of extreme physical pain. The victim also testified that he required a nerve block while in the hospital to manage his pain, that he was hospitalized for four or five days, that he had to return to the hospital, and that he eventually had to quit his job as a truck driver because the pain was too severe for him to continue working. No evidence was presented to refute his testimony. The jury, as the trier of fact, accredited the victim's testimony. The jury obviously believed that the victim suffered an injury to his shoulder and neck. In this case, viewed in the light most favorable to the State, a jury could have reasonably inferred from the victim's testimony that he was injured and that he suffered extreme physical pain as a result of appellant's attack. Appellant is not entitled to relief on this claim.

## B. Constitutionality of Tennessee Code Annotated Section 39-11-106(a)(34)(C)

Appellant contends that the statutory definition of serious bodily injury is unconstitutional because it is vague and thus violates due process because it does not define extreme physical pain. *See* Tenn. Code Ann. § 39-11-106(a)(34)(C) (2010). Other states have considered the constitutionality of the definition of "extreme physical pain" under the doctrine of vagueness and have rejected this argument. *See, e.g., State v. Broussard*, 33 So. 3d 1036, 1037 (La. Ct. App. 2010) (citation omitted) ("'[E]xtreme physical pain[,]' . . . as used in the statute[,] is not unconstitutionally vague since it 'describes a condition which most people of common intelligence can understand.'"); *People v. Knowles*, 709 N.Y.S.2d 916, 920 (Rensselaer County Court 2000) (citation omitted) ("The term 'extreme physical pain' is not 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'").

When an appellant challenges the constitutionality of a statute, we apply the general principles of statutory construction. *State v. Prater*, 137 S.W.3d 25, 31 (Tenn. Crim. App. 2003). "Appellate courts are charged with upholding the constitutionality of statutes wherever possible." *Id.* (citing *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990)). On appeal, we must "indulge every presumption and resolve every doubt in favor of the constitutionality of the statute when reviewing a statute for a possible constitutional infirmity." *Id.* (citing *Lyons*, 802 S.W.2d at 592). A penal statute "is void for vagueness if it is not 'sufficiently precise to put an individual on notice of prohibited activities.'" *Id.* (quoting *State v. Thomas*, 635 S.W.2d 114, 116 (Tenn. 1982)). We construe a criminal statute "'according to the fair import of [its] terms' when determining if it is" unconstitutionally vague. *Id.* at 32 (alteration in original) (quoting Tenn. Code Ann. § 39-11-104). In *State v. Burkhart*, 58 S.W.3d 694, 697 (Tenn. 2001), our supreme court reiterated

that "[d]ue process requires that a statute provide 'fair warning' and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed." (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

However, our supreme court does not require "'absolute precision in drafting prohibitory legislation.'" *Prater*, 137 S.W.3d at 32 (quoting *State v. Wilkins*, 655 S.W.2d 914, 916 (Tenn. 1983)). In considering whether a statute is void for vagueness, appellate courts should consider whether the prohibitions contained therein are not clearly defined and "thus susceptible to different interpretations regarding that which the statute actually proscribes." *Id.* (citing *State v. Whitehead*, 43 S.W.3d 921, 928 (Tenn. Crim. App. 2000)). "Therefore, a statute is not unconstitutionally vague 'which by orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision.'" *Id.* (quoting *Wilkins*, 655 S.W.2d at 916).

Our courts have noted the difficulty of quantifying physical pain. *Farmer*, 380 S.W.3d at 101; *State v. Sims*, 909 S.W.2d 46, 49 (Tenn. Crim. App. 1995). In *Farmer*, our supreme court cited with approval this court's application of the *ejusdem generis* canon of statutory construction, wherein we concluded that "'the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries.'" *Farmer*, 380 S.W.3d at 101 (quoting *Sims*, 909 S.W.2d at 49). Thus, the degree of pain necessary to establish "extreme physical pain" must be "extreme enough to be included in a class of injury that involves a substantial risk of death, protracted unconsciousness, permanent disfigurement or protracted loss, or substantial impairment of loss of a body part or mental faculty." *Id.*

*Farmer* and *Sims* provide adequate guidance for consistent, objective review by appellate courts. Moreover, the pattern jury instructions provide adequate guidance for juries to be able to discern whether the evidence supports a finding of serious bodily injury. In this case, the trial court instructed the jury:

> "Serious bodily injury" means bodily injury that involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a bodily member, organ[,] or mental faculty. "Bodily injury" includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of a bodily member, organ, or mental faculty.

Because our courts have, "'by orderly processes of litigation,'" rendered this statute "'definite and certain for purposes of judicial decision,'" *Wilkins*, 655 S.W.2d at 916 (citation

omitted), we conclude that Tennessee Code Annotated section 39-11-106(a)(34)(C) is not unconstitutionally vague.  Accordingly, appellant is not entitled to relief on this issue.

## CONCLUSION

Following our thorough review of the record, the parties' briefs, arguments of counsel, and applicable law, we discern no error and affirm the judgment of the trial court.


_____

ROGER A. PAGE, JUDGE